## DILL *v.* THE STATE.

1. A new trial will not be granted because the judge, on objection made by defendant's counsel, did not stop the solicitor-general in his concluding argument to the jury, when that officer had read to and commented on before the jury a section of the Penal Code, the provisions of which had no direct bearing on the case, when, on the interposition of the objection, the court considered the same and ruled, in the hearing of the jury, that the law insisted on did not apply in the case.

2. If there was any error in the admission of the statement of the deceased, immediately subsequent to the difficulty, that the accused hit him with a rock, as not being properly a part of the res gestæ, such error was rendered harmless by the statement made to the jury by the accused, that he did strike the deceased with a rock.

3. There was no error in allowing the State to put in evidence a certain rock which was claimed to be the one that the defendant used in striking the deceased. While the evidence identifying this instrument as the one used was not conclusive, it was entirely legal, after preliminary evidence showing that the deceased was stricken with a rock, that the one offered was found at the place where the altercation occurred, and that it had on it hair, presumptively attached by contact with the head of the deceased, to permit the same to go to the jury with such evidence, in order that the jury might determine whether it was in fact the rock with which the wound was inflicted.

4. Where on a trial for murder the jury is instructed in relation to the law of justifiable homicide more favorably to the accused than is warranted by the law, such charge, though error, is not one of which the accused can justly complain; and for the commission of such an error a new trial will not be awarded.

.5. Where a new trial is sought on the ground of newly discovered evidence, and it is apparent from. the testimony adduced on the trial, as well as from that offered in support of the motion, that the witnesses who are relied on to furnish the new evidence were, within the knowledge of the accused, at the scene of the difficulty immediately prior to the altercation which resulted in the homicide and some of them during and subsequent to the altercation, there was no error in overruling the motion. Especially is this true where a considerable portion of such newly discovered evidence is merely cumulative, some of it tending to impeach a witness sworn at the trial, and other parts immaterial ; and when it further appears that all the witnesses relied on to furnish such evidence were subpœnaed by the State, present at the trial, and some of them actually sworn as witnesses but not called to testify.

Submitted February 6, — Decided March 14, 1899.

Indictment for murder.   Before Judge Kimsey.   Habersham superior court.   September term, 1898.

Pink Dill was charged with the murder of William Manus, and was found guilty of voluntary manslaughter.   His motion for a new trial was overruled, and he excepted.   The opinion states the other material facts.

*J. J. Bowden* and *J. B. Jones*, for plaintiff in error.
*W. A. Charters, solicitor-general,* by *W. F. Findley,* contra.

LITTLE, J. 1. One of the grounds of the motion for new trial is, that during the progress of the trial the solicitor-general, in conclusion, read to the jury section 72 of the Penal Code, and insisted that it was the law of the case.   This was objected to by defendant's counsel.   The court ruled, in the presence and hearing of the jury, that' the provisions of the section were not applicable, but did not prevent the solicitor-general from continuing his argument on the same line.   We fail to see what application this section of the code had in the solution of the question as to the guilt of the plaintiff in error. As we understand the evidence in the record, the issue being tried was to be determined on other principles of law than those insisted on by the solicitor-general in this part of his argument.   However, we do not think that the judgment overruling the motion for new trial should be reversed because the court did not stop this part of the argument.   When defendant's counsel made objection, the court ruled that the law in-

sisted upon did not apply, and the jury should and doubtless did have regard, in determining the question of the guilt of the accused, for the rulings of the court and the law given to them in charge. A careful review of the entire record fails to induce the belief that a presentation of the provisions of law contained in this section had any effect on the finding of the jury.

2. Another ground of the motion is predicated on the admission of the evidence of Mrs. Manus, that the deceased, her husband, told her, about the difficulty with the accused, that "he ought to have fought him fair and ought not to have hit him with a rock." This evidence was objected to because it was not shown that the statement of the deceased was made as a dying declaration. It appears that the deceased and the accused had been engaged in a fight in which the deceased had received a wound on the left side of the head, which fractured his skull; and that no one was present at the time the wound was inflicted, except the combatants. After the cessation of the fight, which occurred in the immediate vicinity of the dwelling-house of the deceased, the latter in company with his wife went into his house, and the conversation in which the statement objected to was made occurred within a very short time after the fight. The judge in admitting the evidence ruled that it might go to the jury as a part of the res gestæ, the statement having been made but a few minutes before, or during the fight. This evidence we think was properly admitted as a declaration accompanying the altercation in which the wound was received. It was subsequently shown by the evidence that the wound which deceased received in the altercation was the cause of his death, and the explanation of how it was received was, in point of time, a part of the same transaction. Penal Code, § 998; *Hall* v. *State*, 48 *Ga.* 607. What the law distrusts in the admission of such evidence is not after-speech but afterthought. Here there was no fair opportunity for the will of the deceased to mold or color his statement. *Futch* v. *State*, 90 *Ga.* 478. But even if the evidence was improperly admitted, such admission affords no ground for the reversal of the judgment overruling the motion for new trial.

The defendant in his statement told the jury, in giving his account of the fight, that "I reached down and got me a rock and knocked him loose from me." So that the testimony that the deceased was stricken with a rock comes as well from the lips of the accused as from the deceased.

3. Another ground of the motion assigned error to the ruling of the court admitting in evidence a rock, claimed to be the instrument with which the accused inflicted the wound on the deceased. The wound was apparently small in size, and was not at first deemed to be a serious one. It could readily have been inflicted with a stone or rock. The evidence identifying this rock to be the instrument with which it was inflicted was circumstantial. The wife of the deceased, acting on information, in company with others, went, after his death, to the place where the difficulty occurred, and found the rock offered in evidence; and while it is true the testimony showed that many other rocks of similar character were there, one witness testified that the particular rock in question had hair on it, which it was claimed attached to it from contact with the head of the deceased. Under this testimony, it was proper to permit this rock to go in evidence, not as having been absolutely proved to be the instrument with which the wound was inflicted, but that the jury might consider the evidence relating to that question, and then determine the fact as to whether it was or was not the weapon used by the accused. The size, weight, and character of this stone, if it should be the instrument which was used, would have had a very important bearing on the verdict to be rendered by the jury. The evidence of identification was by no means complete; but it was sufficient to permit the stone to go to the jury, together with the evidence which sought to identify it as the weapon used.

4. Exception is taken to the refusal to grant a new trial because of the following charge of the court: "If a person kill another in his defense, it must appear that the danger was so urgent and pressing at the time of the killing, that, in order to save his own life, or prevent a felony from being committed on his person, the killing of the other was absolutely necessary," etc. This charge was clearly error, and mingled two

entirely different principles of law without giving proper effect to either.    Our Penal Code, § 70, declares that it is justifiable homicide where one kills another who manifestly intends or endeavors by violence or surprise to commit a felony on the person of the slayer.    It is not essential, in order for such killing to be justifiable, that it was absolutely necessary to prevent the commission of the felony.    It is sufficient, in order to make this defense available, if it appear that the circumstances were sufficient to excite the fears of a reasonable man that a felony was about to be committed, and that the party killing acted under the influence of those fears.    Penal Code, § 71.    Nor is it true, as a matter of law, that in cases of mutual combat it is justifiable homicide for one, who voluntarily enters into a fight with another, to kill his antagonist to prevent any other felony than the taking of the life of the slayer.    But to be justified for a homicide following a mutual combat, it must appear that the danger to the slayer was so urgent and pressing at the time of the killing, that, in order to save his own life the killing of the other was absolutely necessary.    The principles of law which justify a killing in each of these two instances stands upon an entirely different footing.    In the one case, that following mutual combat, the slayer, having been at fault in that he voluntarily entered the fight which brought on the necessity, can only take the life of his antagonist when it is absolutely necessary to save his own life, and only then when the person killed was the assailant, or when the slayer has in good faith endeavored to decline any further struggle before he strikes the mortal blow.    A homicide to prevent the commission of a felony on the person of the slayer is a pure defense unmixed with fault, so that it be done under circumstances sufficient to excite the fears of a reasonable man that the deceased was intending or endeavoring by violence or surprise to commit a felony of any grade on his person, habitation, or property.    It does not, however, follow that, because it was erroneous, the charge complained of should work a new trial for the plaintiff in error.    Certainly, if it were more favorable to him than a correct interpretation of the law would be, he can not complain of its error. . It was very proper for the

court to charge the jury the principles of law under which the accused would have been justifiable. The evidence tended to show that the accused and the deceased were engaged in a mutual combat at the time the mortal wound was inflicted. The rule of law, as we have before stated, is, that before he would be justified, the danger to him must have been so urgent and pressing at the time he killed the deceased, that, in order to save his own life, the killing was absolutely necessary. This is the principle which the accused was entitled to have given in charge to the jury. What did he get? The jury was told that the danger must have been so urgent and pressing at the time of the killing, that, in order to save his own life or prevent a felony from being committed on his person, the killing of the other was absolutely necessary, etc. A felony is any offense punished by law with death or confinement in the penitentiary. Therefore, under this charge of the court, if the accused, notwithstanding he had voluntarily engaged in the combat, killed the deceased to prevent any injury to his person which would only amount to a felony and less than the taking of his life, he would be justified. While the charge given was error, it qualified the rule of law in favor of the accused, and he neither can nor ought to be heard to complain. It is declared by section 1060 of the Penal Code, that a new trial may be granted in all cases when the presiding judge may deliver an erroneous charge to the jury *against* the applicant for new trial, on a material point.

5. A further exception is made to the ruling of the judge in refusing to grant a new trial on the ground of newly discovered evidence. To support this ground of the motion, three affidavits are presented. One, from Jane Busha, to the effect that, on Monday following the altercation in which the deceased received the mortal wound, she was at the house of the deceased, and heard him say that he had his knife in his hand at the time of the fight with Dill, and aimed to kill Dill, but did not do it. Another, from G. W. Fisher, that on the night when the difficulty occurred, he was at a house near that of the deceased, and hearing the wife of the deceased scream, in company with the inmates of the house he went

to where she was, and went home with her; that on the
way Mrs. Manus said that she had had a great deal of
trouble since she left her mother, that her husband was so
overbearing, that during the fight with the accused she held
on to her husband until he told her he would beat her brains
out if she didn't turn him loose, that she did so, and then
went after help; that when he reached the house of the de-
ceased, the accused was standing in the yard, very quiet, while
the deceased was in the house cursing; that deponent induced
the accused to leave; that afterwards he went into the house
and saw the deceased, who was very drunk and cursing; that
the deceased, several times, said he had whipped the accused
and could do it again, and would whip him before the next
night; and that deceased was reputed to be a very violent man
when drunk, and he had the reputation of invariably using
his knife.  The third affidavit was from John Watkins, who,
after setting out certain bad language and threats used by the
deceased to and of the accused on the Sunday afternoon im-
mediately preceding the altercation between the parties, stated,
that he was about to leave and had gotten a few steps away,
when deceased attacked the accused and they had a fight; that
it was dark, deponent could not see the fight, could only hear;
that the deceased was the aggressor, accused seemed quiet and
peaceable, while deceased was wild and uncontrollable; that
the wife of the deceased tried to keep her husband away, but
he tore loose from his wife and followed the accused as he was
trying to leave; from the voice of the deceased he could tell
that he was the aggressor and following the accused; that the
deceased was a violent and dangerous man when drunk, and
would use his knife on his most intimate friends without prov-
ocation.

The rule which authorizes a new trial to be granted for
newly discovered evidence is stated in section 1061 of the Penal
Code in the following language: " A new trial may be granted
in all cases, when any material evidence, not merely cumula-
tive in its character, but relating to new and material facts,
shall be discovered by the applicant after the rendition of a
verdict against him," etc.  Interpreting the rule thus stated,

44

this court has frequently declared that such applications are not favored, and are received with caution. *Berry* v. *State*, 10 *Ga.* 527; *Clark* v. *Carter*, 12 *Ga.* 500; *McAfee* v. *State*, 31 *Ga.* 42; *Polite* v. *State*, 78 *Ga.* 347. It must further appear that the evidence has come to the defendant's knowledge since the trial, and that it was not owing to the want of due diligence that he did not acquire it sooner. The affidavits containing the alleged newly discovered testimony are accompanied with an affidavit of the plaintiff in error, to the effect that he did not know of the evidence set out in the affidavits, and that the same could not have been discovered by the exercise of ordinary diligence; while the affidavit of his counsel simply states that they did not know of the evidence set out in such affidavits. The latter is defective in that it is not declared that they did not know of the evidence at the time of the trial. We of course give due credit to these affidavits; but it seems to us that, with any sort of diligence, the information contained in the affidavits could have been readily discovered. Each and every one of these witnesses were subpœnaed by the State, were in attendance on the court at the time of the trial, and two of them — Busha and Watkins — were sworn as witnesses but not examined, and Fisher was subpœnaed but not sworn as a witness. Further than this, it is shown by the testimony of Mrs. William Manus, who was the first witness introduced on the part of the State, that Jane Busha was at the house of the deceased in company with his wife, the evening of the difficulty and immediately preceding the same. The accused was obliged to know this fact, because, according to the testimony of this witness she was there after the accused came to the house. The witness Ayers also testified that the witness Jane Busha was at the house of the deceased immediately preceding the difficulty. As to the evidence of the affiant Fisher, there can not be the slightest excuse why, if his testimony was wanted by the accused, he was not put on the stand to testify, because, when this affiant went to the house of the deceased, he found the accused there and talked with him, and the affiant then said to the accused to leave there, that the deceased was drunk, and under his importunities the accused left the place know-

ing that the witness remained there, and further knowing that this witness was aware of the drunken condition of the deceased. It appears also, from the affidavit of the witness Watkins, that the accused did know that this affiant was at the place at the time of the difficulty, because he says Manus and Ayers "went to cursing, and in a little while Pink Dill came down to where we were and also squatted down on the ground," and this was the time at which the difficulty commenced between the deceased and the accused. So that the accused had absolute personal knowledge that these witnesses were at the place at the time the difficulty occurred, or just immediately preceding it, and, with diligence of any character, could have easily and readily ascertained about what they would swear. Besides, there is very little of the evidence contained in these affidavits which is original. That portion of the evidence relating to the violent character of the deceased is cumulative, as counsel for the accused at the trial cross-examined witnesses on this subject and brought out the fact that deceased had the character of being a violent man when drinking. It would be a waste of the time consumed in the trial of criminal cases, if after verdicts were rendered they were set aside on such a showing. In the case of *Monroe* v. *State*, 5 *Ga.* 139, Judge Lumpkin, speaking for this court, said: "We fully subscribe to the doctrine, that motions for new trial (on this ground) are to be received with caution, and for the reason assigned, because there are few cases tried, especially those involving life, in which something new may not be hunted up, and because it leads very much to perjury, to admit new evidence after the party who has lost the verdict has had an opportunity of discovering his adversary's strength and his own weakness." The court did not err in overruling the motion for new trial on the ground of newly discovered evidence.

*Judgment affirmed. All the Justices concurring.*