654

DECIDED DECEMBER 10, 1929.

*Porter & Mebane,* for plaintiff in error.

*M. Neil Andrews, solicitor-general, Dean Owens,* contra.

LUKE, J. Cleve Bobo was convicted of voluntary manslaughter, and he excepts to the overruling of his motion for a new trial.

The only special ground of the motion for a new trial alleges error in the refusal of the court to admit in evidence two rocks alleged to be in the hands of the deceased at the time the defendant shot him. It is undisputed that the deceased had two rocks. Numerous witnesses testified to that fact, and the deceased so stated in his dying statement. One of the rocks weighs between a quarter and a half pound, and the larger one weighs twelve or fifteen ounces. They are both before this court as exhibits. The whole defense of the accused hinged upon the deceased's having these two rocks. The defendant contended (and there was evidence to substantiate the contention) that the deceased and the accused had trouble prior to the time of the homicide, and that since that time the deceased had made numerous threats against the defendant's life; that at the time of the homicide the deceased came up to the defendant and pushed the defendant's hat down; that the defendant said to him, "You have threatened to kill me, so go on and leave me alone;" that the defendant and the deceased cursed each other; that the deceased first picked up a bottle, and then threw down the bottle and picked up two rocks, and that when the deceased drew back with the rocks in his hands and with his left side towards the accused, the accused shot him. The two rocks excluded from the evidence were exhibited to a practicing physician, who testified that

rocks of this shape, size, and weight would be likely to kill a man the size of the defendant, if they were thrown hard enough and hit him in a vital section, and that he considered them "just about as dangerous as a knife or pistol." The refusal to admit the rocks in evidence was based on the ground that they were not sufficiently identified. It is undisputed that the shooting occurred at "the Martin place." C. I. Harris, the deputy sheriff, and witness for the State, testified: "At the time of this killing I was a deputy sheriff of Floyd county. Mr. Horton, Mr. Jolly, and myself arrested the defendant. We got a message that a man had been shot, and that the man wanted to give up who did the shooting, and when we drove up to Knight's store Cleve Bobo was standing there, and he walked up to me and gave me his pistol. That was Riley Knight's store; he runs it back towards town from Martin's store. The defendant asked us to come down there *where the shooting occurred,* which we did. These two rocks lying here, I have been in charge of them since that time. These are the two rocks I picked up *there.* Those are the same two rocks we picked up down *at Martin's stand,* at this place. They were just out from the corner of Martin's stand, between what you might call the sidewalk and the road, in the edge there. These rocks are the ones I saw there. . . Those were the *only two rocks lying around there.* . . Riddle (the deceased) told me that he had the rocks in his hands." There were several people present at the time and place of the homicide, and there is no evidence that the rocks were "planted" there. Hubert Smith testified: "I saw the rocks that Mr. Harris picked up at Mr. Martin's place when he came up there. In my best judgment that is the rocks." The defendant stated that he would swear that "those are the two rocks that he [deceased] had." No witness denied or disputed that these were the rocks that the deceased had at the time the defendant shot him.

The jury had out with them the pistol that the defendant had at the time of the homicide, and had an opportunity to examine it and have it before them during their deliberations; and we are of the opinion that they should also have had out with them these rocks and an opportunity to examine the rocks during their deliberations. Human experience teaches us that the sight of weapons sometimes (though not always or necessarily) influences one's trend of thought as well as conduct; and we can not say what effect

the examination of the rocks by the jury during their deliberations would have had upon their verdict. In *Moon* v. *State,* 68 *Ga.* 687 (3), 695, the Supreme Court said: "The bullets taken from the body of the deceased on a post mortem examination, identified as they were, were also admissible. They were the voiceless, yet nevertheless significant, evidences of the intent that prompted the slayer when he fired the fatal shot." In the instant case the deputy sheriff, who got to the scene of the shooting soon after it happened and took the defendant in charge and took his pistol from him, testified that the two rocks which he picked up, and which he had kept since that time, "were the only two rocks lying around there." In the case of *Dill* v. *State,* 106 *Ga.* 683 (3), 686 (32 S. E. 660), the "testimony showed that many rocks of similar character were there," but since one witness testified that a particular rock in question had hair on it, the court held that "it was proper to permit this rock to go in evidence, not as having been absolutely proved to be the instrument with which the wound was inflicted, *but that the jury might consider the evidence relating to that question,* and then determine the fact as to whether it was or was not the weapon used by the accused. The size, weight and character of this stone, if it should be the instrument which was used, would have had a very important bearing on the verdict to be rendered by the jury. The evidence of identification was by no means complete, but *it was sufficient to permit the stone to go to the jury, together with the evidence which sought to identify it as the weapon used."* (Italics ours.) In the instant case it is undisputed that the deceased had two rocks in his hands at the time of the homicide; and there is considerable circumstantial evidence that the rocks which the court excluded from evidence were the ones that the deceased had. The sole defense of the accused was that his life was endangered by these rocks in the hands of the deceased, who had threatened to take his life; and while the evidence of identification of the rocks was not complete, it was sufficient to permit the rocks to go to the jury, together with the evidence which sought to identify them as the weapons in the hands of the deceased at the time of the homicide, in order that the jury might determine whether or not they were the rocks that the deceased had, and, if so, whether their size, shape, and weight constituted them a deadly weapon, and whether such a weapon in the hands of an antagonist was

sufficient to excite the fears of a reasonable man that a felony was about to be committed upon him. The court erred in not admitting the rocks in evidence.

*Judgment reversed. Broyles, C. J., and Bloodworth, J., concur.*