## JACKSON *v.* THE STATE.

1. If one who had been a constable of a certain militia district in a given county, by removal therefrom to another district, thereby vacated his office, nevertheless if, while in attendance upon the superior court of that county, he was selected by the sheriff to act as bailiff during the term of court, and while acting in that capacity had charge of a jury after a case had been submitted to them, no objection being made to his acting in that capacity, the verdict made by the jury will not be set aside upon the ground that the jury were in charge of one who was not in fact a constable of the county.

2. The contention that the bailiff while in charge of the jury mingled with them and slept in the same room with them, while they were deliberating in the case, was sufficiently met and explained.

3. The mere negative testimony of the bailiff himself that he had no recollection of taking the oath prescribed in section 883 of the Penal Code (1910), relating to oaths of bailiffs, and of others who were present a part of the time in the court-room that they had no recollection of seeing him sworn, did not require a finding upon the part of the trial judge, as a matter of fact, that the bailiff did not take the oath prescribed. Nor would the additional fact that there was no record upon the minutes of the court of the bailiff's having been sworn, require such a finding.

4. The exception to the charge upon the ground that it contained an expression of opinion by the court is without merit.

5. There was no evidence upon which to predicate a charge upon the subject of involuntary manslaughter, or upon the theory of accidental shooting.

No. 2673.   OCTOBER 15, 1921.

Indictment for murder. Before Judge Eve. Worth superior court. May 25, 1921.

*T. R. Perry* and *A. L. Miller,* for plaintiff in error.

*George M. Napier, attorney-general, R. S. Foy, solicitor-general,* and *Seward M. Smith, asst. atty.-gen.,* contra.

BECK, P. J. Joe Jackson was tried under an indictment charging him with the offense of murder. The jury returned a verdict of guilty, without a recommendation. The accused made a motion for a new trial, which was overruled, and he excepted. Certain of the grounds of the motion for a new trial relate to misconduct upon the part of the bailiff in charge of the jury while it was in his charge, after the case had been submitted to them; and in addition to the alleged acts of misconduct upon his part, it is charged in the motion that the bailiff was not sworn; also that he was not a legal constable of the county.

1. The bailiff referred to, Hiram Stewart, had been a bailiff in a certain militia district in the county, but had removed therefrom. If by his removal from the district his office was vacated and he was no longer a constable of the county, nevertheless if, during the term of court at which the accused was tried, he was selected by the sheriff as a bailiff and acted as such, he was a de facto officer, and the fact that he was placed in charge of the jury is not ground for setting aside the verdict, especially as no objection was made to his acting as bailiff and performing the duties of such an officer.

2. The contention that the bailiff improperly mingled with the jury and conversed with them, and allowed another constable to come into the room where the bailiff was, was sufficiently met and explained by the following statement of the bailiff to whom the improper conduct is imputed: "That he is the person who served as bailiff of the superior court of Worth County, and as such bailiff had charge of the jury which tried the case of The State vs. Joe Jackson, charged with murder, at the January adjourned term, 1921; that he has seen the affidavit of S. A. Powell, in

which it is stated in substance that affiant slept in the jury-room with said jury while they were considering said case. Deponent says the facts are as follows: The case above mentioned was submitted to the jury after arguments of counsel and charge of the court had been concluded, in the afternoon of a day during said term, and said jury then placed in charge of deponent as bailiff of said court. Said jury went immediately to the jury-room used by trial juries for deliberations upon cases in said court, the regular jury-room, where they remained until seven or eight o'clock p. m., when they were by deponent, in obedience to the direction of the court, carried to the café, after supper had been prepared for them, when and where they ate supper, separated from other persons, and after having eaten their supper were by deponent immediately taken back to the jury-room, where they remained an hour or two after supper; and not having arrived at a verdict in the case, deponent, by direction of the court, carried them to the room in the court-house prepared for trial juries to sleep in, where they slept during the night. The weather was cool, and fire was needed in their bedroom, and the said S. A. Powell was asked by deponent to carry a turn of wood into the jury bedroom for making a fire, when said Powell and deponent each took therein a turn of wood, and said Powell went immediately out of said room and did not speak to the jury nor to any member of the jury. Deponent prepared a fire for the comfort of the jury, and occupied a cot prepared for the purpose, which cot obstructed the only door or place of entrance or exit in or from said room. Deponent did not converse with said jury, nor did any other person during the time they were in charge of deponent, nor within his knowledge. Deponent did not mix or mingle or converse or speak with said jury, nor with any member of said jury, except under direction of the court, and that said jury did not discuss said case nor any feature of said case in the presence of deponent, nor was said case nor any feature of it mentioned by deponent, nor by any one else in the presence of said jury, nor by any member of said jury. That deponent did escort said jury, while in his charge, across the court-house grounds into the streets, down the street to the café, and not the hotel, and back to the jury-room, but did so as above stated in obedience to the direction of the court, and for the purpose of said jury getting their meals.

And at no time did they mix and mingle with other persons further than was necessary in passing and meeting such persons upon the streets and café, and never at any time did said jury or any member mix and mingle with other persons, further than stated above, and did not discuss said case either among themselves out of the jury-room nor in the presence of deponent, nor in the presence of any other person, nor did any other persons mention said case or any feature of said case in the presence or hearing of said jury."

The court was the judge of the credibility of the affiant's statement, and evidently found it to be true. That being so, this court can not disturb his finding; and the ground of the motion for new trial based upon misconduct of the bailiff and the jury can not avail the plaintiff in error in the face of the judge's finding.

3. Failure of a bailiff to take the oath prescribed in section 883 of the Penal Code (1910), relating to oaths of bailiffs taking charge of juries, is ground for the grant of a new trial. *Roberts* v. *State,* 72 *Ga.* 673; *Washington* v. *State,* 138 *Ga.* 370 (75 S. E. 253). But where bailiffs take charge of juries, there is a presumption that they were regularly sworn; and the mere negative testimony of the bailiff himself that he had no recollection of taking the oath, and of others who were present a part of the time in the court-room that they had no recollection of seeing him sworn, will not require a finding upon the part of the judge, when the question of whether the bailiff was sworn or not is raised in the motion for a new trial, that the bailiff was not sworn. Nor will the fact that there was no record upon the minutes of the court of the oath having been taken by the bailiff, in addition to such negative testimony, require a finding that he was not sworn. Especially is this true where such negative affidavit of the bailiff is taken quite a while after adjournment of the court.

4. In the trial of the case the judge charged the jury as follows: " I charge you, as a principle of law for your consideration in this case, that motive or intention is essential to malice, and malice is an essential ingredient of the offense of murder. As before stated, intention is to be arrived at by such proof of the surrounding circumstances connected with the perpetration of the offense and the sound mind and discretion of the person accused.

You inquire whether there was any motive on the part of the defendant to induce him to take the life of the deceased; and if there was any motive, what that motive was. If you find there was no motive on his part to commit the act, you may consider it, especially if the evidence leaves the defendant's guilt at all doubtful, in deciding whether the defendant is guilty or not." This charge is excepted to upon the ground that "it assumed that the defendant took the life of the deceased." Fairly construed, the charge is not open to this exception.

5. Several witnesses testified directly and positively that the accused shot the deceased. No witness testified to any circumstance tending to show that the shooting was unintentional or that it was accidental. The accused himself in his statement claimed that he was not present at the scene of the shooting; that he had left the house in which the killing took place, and had gone away from the scene of the homicide. Manifestly the court did not err in not charging the jury upon the theory of accidental shooting or the law of involuntary manslaughter.

*Judgment affirmed. All the Justices concur, except Atkinson, J., absent on account of sickness.*