## BROWN v. THE STATE.

1. The judge of the superior court properly refused to certify and order sent up, as a part of the transcript of the record, "the question and answer report of the court reporter" of the testimony as delivered.

Criminal Law, 16 C. J. p. 300, n. 69; p. 589, n. 10; p. 701, n. 22; p. 714, n. 34; p. 1056, n. 20; p. 1057, n. 21; p. 1059, n. 42; p. 1061, n. 61; p. 1119, n. 34; 17 C. J. p. 56, n. 16; p. 157, n. 88; p. 161, n. 63; p. 164, n. 19; p. 248, n. 3; p. 250, n. 13; p. 271, n. 41; p. 317, n. 10.

Homicide, 29 C. J. p. 1087, n. 59.

Under the provisions of section 6093 of the Code, the brief of evidence required in motions for new trials is a condensed and succinct brief of material portions of oral testimony. The briefer the brief the better, provided it includes the substance of all the material portions of the evidence, oral and documentary. The brief of evidence is not dependent exclusively upon the stenographic report. Properly construing section 6093, the use of the question and answer form in the brief of the evidence, except in unusual instances, is not permissible.

2. There is no merit in the assignment of error that the judge inserted testimony into the brief of evidence which had not in fact been delivered, because such testimony does not appear in the stenographic report of the evidence. "The judge has a right to correct a brief of evidence at any time before the motion for a new trial is overruled; and · this is true notwithstanding he may have approved the brief of evidence before that time." *McCowan* v. *Brooks*, 113 *Ga.* 532, 536 (39 S. E. 115). It is the approval of the trial judge alone .which places the stamp of validity on the brief of evidence. Nothing will be heard in a court of review which conflicts with the recollection of the trial judge as to what transpired as to any phase of the investigation, including what evidence was introduced. From a juridical standpoint a stenographic report of the testimony is worthless if its contents differ from the recollection of the sworn trial judge; and, for the reason that the certificate of approval of the brief of evidence of itself imports verity, this court would not consider the stenographic report of the court reporter for the purpose of impeaching the recollection of the judge as certified in his approval of the brief of evidence.

3. The several subdivisions of the first ground of the amendment to the motion for a new trial present only statements amplifying and specifying the particulars in which the verdict is contrary to law, contrary to the evidence, and without evidence to support it, as developed by a minute and ingenious analysis of the evidence. Upon a careful consideration of the record it is clear that the controlling question as to the sufficiency of the evidence, both as matter of law and as matter of fact, is dependent upon whether the testimony of the accomplices is corroborated as required by law. There are various circumstances adduced in proof, which, independently of the testimony of the accomplices, tend to establish the guilt of the accused; and as the quantum of proof requisite to produce corroboration is a matter exclusively for the jury, it can not .be said that the testimony of the accomplices was not sufficiently corroborated by testimony aliunde their statements.

4. It was not error to admit testimony of a witness who testified that "about the third week in September he raided a still near where Langston was killed," over the objection that there was "no charge that Melvin Brown, the defendant, had any connection with the whisky business," and a further objection that "the record does not disclose where the State proved that Melvin Brown had any connection with the whisky business in Fayette County or elsewhere." This testimony, even if irrelevant, has not been made to appear to have been prejudicial to the accused. Furthermore, the defendant is one of several codefendants charged with having committed the homicide alleged in the indictment, and there is much testimony that the alleged murder

was committed on account of the raiding of the still and other stills in which a brother-in-law of the accused, who was himself convicted of the murder, was interested. The testimony authorizes the inference that the raiding of the still was the proximate cause of the homicide, and relationship by affinity would be at least as strong a circumstance for the purpose of identifying a participant in the homicide as similarity of occupation. The objection offered impliedly admits that the testimony would not be objectionable had there been a charge or proof that the defendant was connected with the whisky business in Fayette County or elsewhere. Had the specific objection been made before the lower court that the testimony was irrelevant or inadmissible, another and a different question would have been presented than that disclosed by the record.

5. The third ground of the amendment to the motion for a new trial is insufficient to present any question for the consideration of this court. It is settled that a charge abstractly correct in itself is not erroneous merely because an additional instruction especially desired to fit the facts of a particular case is not added by the court ex mero motu, in the absence of a timely written request that the instruction be completed as desired.

6. In the consideration of a ground of a motion for a new trial based upon alleged disqualification of a juror propter affectum, where the evidence as to the prejudice or bias on the part of the juror attacked is in conflict, the trial judge is the final trior, and the exercise of his discretion as to the credibility of the conflicting witnesses is exclusive and conclusive.

7. There was no error on the part of the court in any of the rulings of which complaint is made; and as the verdict has the approval of the trial judge, this court can not interfere in the exercise of his discretion in overruling the motion for a new trial.

No. 5440. FEBRUARY 16, 1927.

Murder. Before Judge Searcy. Fayette superior court. April 3, 1926.

*Joe Hill Smith,* for plaintiff in error.

*George M. Napier, attorney-general, E. M. Owen, solicitor-general,* and *T. R. Gress, assistant attorney-general,* contra.

RUSSELL, C. J. Melvin Brown, together with Rainey Cauthern, Arthur Alexander, Ora Whittle, Oscar Dutton, and Melvin Windham as principals, and Charlie Waller and John Waller as accessories before the fact, were indicted for the murder of James C. Langston. In the trial now under review Melvin Brown alone was upon trial. In the trial Rainey Cauthern and Melvin Windham, who pleaded guilty to the murder as charged, were witnesses. Brown was convicted. He moved for a new trial, which was refused. He excepted to this judgment. It is also assigned as error that the judge directed to be inserted in the record of the

brief of the evidence adduced upon the trial an amendment submitted by State's counsel, purporting to contain additional evidence of George Samuels, which was objected to by the plaintiff in error "on the ground that George Samuels did not testify in this manner, and that the reporter's transcript of the evidence did not show as a part thereof the language inserted by the solicitor-general in the brief of evidence under the direction and by the approval of the court, and which was certified to by the judge as a part of the evidence in the case." Exception is also taken to the fact "that on April 13, 1926, the Honorable Judge W. E. H. Searcy Jr. refused to certify and to order sent up to the Supreme Court the question and answer report of the court reporter in said case, which plaintiff in error claims is necessary to a clear understanding of this case." We shall consider these exceptions in reverse order.

1. It was not error to refuse to certify and order sent to the Supreme Court "the question and answer report of the court reporter." Section 6093 of the Code prescribes as follows: "The brief of evidence required in motions for new trial shall be a condensed and succinct brief of the material portions of the oral testimony, including a similar brief of interrogatories read on the trial. In such brief there shall be included the substance of all material portions of all documentary evidence. Documentary evidence copied as an exhibit or set out in the pleadings, and introduced in evidence, shall not be set out in the brief except by reference to the same. In all cases in which the testimony has been stenographically reported, the same may be reduced to narrative form, or the stenographic report may be used in whole or in part in making up the brief, with immaterial questions and answers and parts thereof stricken, so as in every case to shorten the brief, and include therein only material evidence." This section was taken from the act of 1889 (Ga. L. 1889, p. 119), and the statute was passed for the purpose of lightening the labors of the Supreme Court and obviating the necessity of the members of this court having to wade through a mass of questions and answers which might have been necessary upon the original trial in order to elicit material information as in the case of ignorant, interested, or unwilling witnesses. The legislative act sought for condensation of the evidence, to the end that only evidence material

to the issues sought to be reviewed would obtain, excluding all irrelevant matter and extraneous issues. Expressly, the brief of evidence is not dependent upon a stenographic report, the act providing only that the stenographic report may be used when reduced to narrative form. Under numerous decisions of this court, the rule which provides for the transmission of a brief of evidence, either as a part of the transcript of the record or as embodied in the bill of exceptions itself, requires that such brief of the oral testimony be in narrative form,—a brief of evidence merely setting forth in condensed form such facts appearing in the testimony of each witness as are material to the real issues in the case without repetition,—"the briefer the better." Properly construing section 6093, the use of the question and answer form in the preparation of a brief of evidence, except in very unusual instances such as pointed out in *Crumbley* v. *Brook,* 135 *Ga.* 723, 725 (70 S. E. 655), is not permissible. On the contrary, as held by this court in *Whitaker* v. *State,* 138 *Ga.* 139 (75 S. E. 254), when there is no legal brief of evidence filed with the motion for a new trial, but only a document which fails to comply with section 6093, the court should not look to such document for the purpose of determining the questions raised in the motion for a new trial. Violation of the rule which requires abbreviation of the record of the evidence as delivered in the trial court has frequently debarred plaintiffs in error from securing from the court of review any consideration of alleged errors depending upon the consideration of the evidence. If it was the intent of the plaintiff in error to have the stenographic report of the court reporter transmitted to this court for the purpose of establishing or disproving any portion of the brief of evidence as to which there was a difference between the recollection of the trial judge and any other person, the trial judge nevertheless correctly declined to order the transmission to this court of the "question and answer report of the court reporter in said case," for reasons which will be stated in the next division of this opinion.

2. As appears from the record in this case, the plaintiff in error presented a bill of exceptions on April 13, 1926, which the trial judge refused to certify. On April 15, 1926, in accordance with the provisions of section 6158 of the Civil Code of 1910, the judge returned the bill of exceptions for correction in certain

respects pointed out in the court's order of that day. The present bill of exceptions was tendered on April 23, 1926. As appears from the order of the judge which accompanied the return of the bill of exceptions for correction, the court refused to certify and direct to be transmitted to this court certain matter which he adjudged to be immaterial and irrelevant to the error complained of, with relation to the amendment to the brief of evidence, stating, as to the change in the bill of exceptions which the court was directing, that "It is only necessary to allege in the bill of exceptions that the reporter's transcript of evidence did not contain as a part thereof the language inserted by the solicitor-general in the brief of evidence under the direction and by the approval of the court, and which was certified to as a part of the evidence in the case." The exception based upon this assignment of error is that the judge inserted evidence into the brief of evidence, and thus in the transcript of the record placed before this court testimony which was not delivered, because such testimony does not appear in the report of the evidence as transcribed by the stenographer. As to this, it sufficeth to say that this court, like all other courts of review, can go to no other source to ascertain the truth than to the record of the trial as certified to be true by the presiding judge. This rule applies alike to every phase of the trial, to every proceeding, all the pleadings, to every ruling upon the admissibility of testimony, to the record of the evidence, and in fact to everything that transpires in the course of a trial. Nothing is heard which conflicts with the recollection of the trial judge either in the lower court or in the court of review. From the nature and the necessity of the case there must be some means by which the truth as to everything that occurred in the trial under review can be established, and at the same time the power and dignity of the court must be preserved. For this reason the law has for generations made the judge of the trial court alone the sole arbiter in determining for himself, upon the consideration of an application for a new trial, as well as the court of review thereafter, what actually occurred in every stage of the proceedings; and the conclusion of the trial judge of itself imports verity. So that in a legal sense it is utterly immaterial that the notes of the stenographer reporting evidence of the case may chance to omit testimony which the judge knows to have

44

been delivered in the course of the trial. Important as a steno-graphic report of testimony may sometimes be, such report is utterly worthless from a juridical standpoint if it differs from the recollection of the sworn trial judge. An orderly legal review of a trial would be practically impossible unless the mode of law prescribed should be final and incontestable; and a different rule could not be adopted without depriving the judge of one of the most essential attributes of a court of justice, nor without destroy-ing altogether that confidence which all persons must repose in the court. Before approving a brief of evidence the trial judge may properly resort to the report of the testimony as transcribed by the official reporter, for the purpose of refreshing his recol-lection; but it can not be used even by the judge to supply facts of which he has no recollection. So it was not error, as alleged in the bill of exceptions, for the court to permit or to direct the solicitor-general to insert in the record of the brief of evidence, which it was his duty to approve officially, any evidence material to the issues of the case which he knew had been delivered on the stand, regardless of whether the record of the official reporter contained or failed to contain such testimony. We have said thus much as to the objection to the insertion of the evidence or amend-ment of the brief of evidence by the trial judge, based upon the fact that the testimony inserted did not appear in the reporter's report. Upon the same broad grounds the court overruled the objection that the witness did not testify in the manner set forth in the amendment directed by the court. The court was not re-quired to hear evidence as to what transpired upon the trial. In fact it would have been in derogation of the dignity of the court and error to have done so.

3. We come now to the exception wherein error is assigned upon the judgment of the court in overruling the motion for a new trial. The original motion is based upon the usual general grounds, and the amendment contains numerous assignments of error in its several grounds, which we will first consider seriatim. (1) It is averred that the verdict is contrary to the evidence and the law given in charge by the court, and without evidence to support it, for the following reasons, to wit: (a) The defendant proved by reputable and disinterested witnesses that he was in Opelika, Alabama, on the day and the hour that James C. Lang-

ston was murdered; and these witnesses were unimpeached and uncontradicted except by accomplices.   (b) The State failed to corroborate the testimony of the accomplices by proving that the defendant Melvin Brown was in Fayette County on the day that the murder was committed, by any witnesses other than the accomplices.   (c) The record does not disclose a single circumstance to corroborate the confession of Melvin Windham and Rainey Cauthern.   (d) The confession of Melvin Windham and Rainey Cauthern are conflicting in many details.   (e) According to the evidence of the conspirators, the conspiracy to whip Ab Davis or J. C. Langston, or to kill Ab Davis or J. C. Langston, had been abandoned and Langston told to go on down the road and had gone to the front of the car to crank it at the time Ora Whittle struck him; and since the conspiracy had been abandoned by all the parties before the fatal blow was struck, according to the evidence of all of the accomplices, it would be erroneous to convict any one except those who actually struck the blow.   (f) The evidence failed to show any motive on the part of Melvin Brown to kill J. C. Langston.

Upon a consideration of the record we are of the opinion that the foregoing assignments of error are but a restatement of the general ground that the verdict is contrary to the evidence as minutely analyzed, certain details being specifically pointed out. If there was no evidence in this record corroborative of the testimony of the accomplices, the fact that two witnesses swore that Brown was in Opelika, Alabama, on the day and hour that Langston was murdered might have required the acquittal of the accused. However, the evidence of alibi rests upon the testimony of witnesses whom the jury could discredit altogether in preferring to believe the accomplices to the effect that Brown was not in Opelika, Alabama, but at the scene of the homicide, with his gun drawn on Langston for the purpose of preventing him from resisting the unlawful assault that was intended to be made upon him and which resulted in his death. The statement of the defendant, as testified to by the sheriff, and the testimony of George Samuels as to statements made by Brown to him, if credible to the jury, afforded sufficient corroboration to authorize the jury to believe the accomplices. While the testimony of accomplices must be corroborated, the quantum of testimony and its sufficiency to

corroborate the testimony of an accomplice before a jury is a matter addressed entirely to the jury itself. Assuming, as we must, from the verdict that the jury found sufficient corroboration in the circumstances to which we have just alluded, it is apparent that the assignments of error in (b), (c), (d), and (e) are valueless. While there is evidence in the record which perhaps indicates an abandonment on the part of some of the conspirators of the conspiracy to kill Langston, which might have created a reasonable doubt in their favor to authorize an acquittal, there is no evidence in this record from the fact that Langston was told to go on down the road that the plaintiff in error changed his course or altered the intention with which 'he first aimed the gun at the deceased. Certainly he did not by oral utterance give expression to any change of heart. It is not essential to show motive in order to convict one of murder. Proof of malice, evidence of a homicide caused by and resulting alone from an abandoned and malignant heart, establishes the most powerful of motives—an intent to kill without justification, extenuation, or excuse.

4. The ruling in the fourth headnote requires no elaboration.

5. The third ground of the amendment to the motion for a new trial presents no assignment of error for the consideration of this court. The movant first quotes an excerpt from the charge of the court as alleged to have been delivered to the jury, and says: "Movant contends that the portion of said charge excepted to should have been as follows." Movant then states what the court should, in his opinion, have charged the jury upon this subject, which is largely a repetition of the extract from the charge quoted, but inserting therein the following: "The evidence of an accomplice may be corroborated by direct evidence, that is, the evidence of a witness or witnesses who are not accomplices in the crime for which the defendant is on trial, or by indirect or circumstantial evidence which only tends to establish the issue by proof of various facts sustaining by their consistency the hypothesis claimed. 'To warrant a conviction on circumstantial evidence the proven facts must not only be consistent with the hypothesis of guilt, but must exclude every other reasonable hypothesis save that of the guilt of the accused.' " Even if there were an express assignment of error upon the charge of the court, it would

be without merit, because there was no request for instructions embodying the principle which the plaintiff in error after trial said should have been given to the jury; and it is well settled that a charge abstractly correct in itself is not erroneous merely because an additional instruction especially desired in the particular case is not added by the court ex mero motu. But aside from this point, there is no assignment of error in this ground of the motion for a new trial. The movant states what the judge has charged, and he contends that something different should have been said; but it is not alleged that the court erred in not charging as movant contends he should have charged, or that the charge as delivered was error or contrary to law. A mere recital of what occurred in the course of a trial, either as to rulings upon pleadings, admissibility of evidence, or the charge of the court, followed by a statement that the court could or should have pursued a different course from that followed, is not a sufficient substitute for that specific statement of error which the law requires to enable this court to make a proper review and a correct adjudication in determining whether the lower court erred in refusing a new trial.

6. The fourth ground of the amendment to the motion for a new trial is based upon alleged newly discovered evidence as to the disqualification of Frank McFarland, one of the jurors who convicted the defendant Brown. There was testimony before the court that the juror McFarland had said, before the trial of movant, that "every damn one of them are guilty, especially Melvin Brown." This testimony was contradicted by the juror, and his freedom from bias was established to the satisfaction of the trial court. Nothing is better settled than that in the consideration of evidence as to the bias or prejudice of a juror the judge is the final trior, and the exercise of his discretion as to the credibility of conflicting witnesses is exclusive and conclusive.

*Judgment affirmed.   All the Justices concur.*