23475.   EVANS v. THE STATE.

ARGUED MAY 10, 1966—DECIDED JULY 7, 1966—
REHEARING DENIED JULY 21, 1966.

*E. C. Brannon, Jr., Robert B. Thompson,* for appellant.

*Reid Merritt, Solicitor General, Luther C. Hames, Jr., Special Assistant Solicitor General, Arthur K. Bolton, Attorney General, Carter A. Setliff, Assistant Attorney General, Davis & Davidson,* for appellee.

MOBLEY, Justice.    Alex S. Evans was jointly indicted with Vernon Eugene Williams by the grand jury of Gwinnett County for the murder of Jerry Everett by shooting him with a pistol on the 17th day of April, 1964.    Williams was first placed on trial, asked for severance, was tried separately, and found guilty of murder as charged in the indictment.    His conviction was affirmed by this court in *Williams v. State,* 222 Ga. 208 (149 SE2d 449).    The defendant, Evans, was then tried, was found guilty of murder, as charged, and was sentenced to death.    The appeal is from that judgment and sentence.    He enumerates as error the overruling of his motion for new trial on the general ground that the evidence is insufficient to support the verdict, and enumerates 26 additional errors.

■    After the decision of this court in *Williams v. State,* supra, companion case to this case, this court requested appellant to file a supplemental brief stating which, if any, of the errors enumerated in this case are controlled by rulings made in the

*Williams* case. In response thereto counsel filed a supplemental brief in which they concede that enumerations of error number 14, 15, 17, 18, 19, 20, 21, and 24 are controlled adversely to his contentions by the decision in the *Williams* case, although he does not concede the correctness of such rulings. Such rulings in *Williams* are controlling on the above errors enumerated and will not be considered further.

■ Enumerated errors number 11, 12, and 13, complaining respectively of the State failing to furnish the defendant with a list of the names of the witnesses upon whose testimony the charges against him are based other than those listed on the indictment, the denial of his motion to quash the indictment, because the evidence produced before the grand jury was hearsay and no evidence of probative value showing the guilt of defendant was produced, and the denial of his motion to quash without hearing evidence, are without merit.

The furnishing of the names of the witnesses who appeared before the grand jury against a defendant in a criminal case meets the requirements of Art. I, Sec. I, Par. V (*Code Ann.* § 2-105) that "Every person charged with an offense against the laws of this State . . . shall be furnished, on demand, with a copy of the accusation, and a list of the witnesses on whose testimony the charge against him is founded . . ." *Keener v. State*, 18 Ga. 194 (2); *Inman v. State*, 72 Ga. 269 (1); *Lewis v. State*, 101 Ga. 532 (28 SE 970); *Palmer v. State*, 23 Ga. App. 84 (1) (97 SE 460). As to enumerations 12 and 13 it has never been the practice in this State for the court to engage in an investigation as to whether the evidence before a grand jury was sufficient to warrant an indictment. *Williams v. State*, 222 Ga. 208, supra (2); *Buchanan v. State*, 215 Ga. 791 (113 SE2d 609).

■ Appellant in enumeration 2 alleges error in charging that, "Slight evidence from an extraneous source identifying the accused as a participator in the criminal act will be sufficient corroboration of an accomplice to support a verdict." This court in *Chapman v. State*, 109 Ga. 157 (4) (34 SE 369) held that in the trial of a criminal case where the State relied upon evidence of an accomplice and claimed that it had been corroborated, it

was error to give substantially this same charge, pointing out that, while the charge is a correct statement of the law, it is not a proper charge, for it is for the jury to determine whether the evidence of the accomplice is corroborated. There, the court observed that the language used may have had a tendency to mislead the jury to infer that if the testimony of the accomplice was corroborated by any evidence, however slight, it was their duty to convict, "especially as the court did not in the same connection caution the jury with the further instruction that such corroboration, whether in their opinion slight or strong, considered in connection with the other evidence, should be sufficient to satisfy the jury of the guilt of the accused beyond a reasonable doubt."

This court in *Rawlins v. State*, 124 Ga. 31 (16) (52 SE. 1) at p. 49, in considering a similar charge as that in *Chapman v. State*, 109 Ga. 157, supra, at p. 164, held that the charge was not error where ". . . the judge distinctly charged the jury more than once that the testimony of an accomplice uncorroborated was not sufficient to convict. He also charged fully upon the law of reasonable doubt, and the extract from the charge above quoted, when taken in connection with the entire charge, was not calculated to mislead the jury in regard to the amount of corroboration required. He tells them in terms that it is a question for them to determine and they are to consider the corroboration, whether it be strong or slight; and the effect of the charge is simply to state that it is for the jury to determine whether the corroboration was of such a character as to satisfy their minds."

Here, the trial judge charged more fully on corroboration of an accomplice than was charged in *Rawlins v. State*, 124 Ga. 31, supra, and that ". . . the determination of the existence of any corroborating evidence, the determination of its sufficiency, if any exists, and the weight and credit to be given the testimony of any accomplice, if corroborated, are all matters for you under the rules given you in charge." This ground is without merit.

■ Enumeration 3 alleges the court erred in giving the following charge: "If you find that there was a conspiracy, and that

the act charged in this indictment grew therefrom, and that the defendant participated in the common intent and purpose of the conspiracy, and that it was an unlawful act that was contemplated, then he would be responsible for the acts of the other persons with whom he conspired, even—he would be responsible, Gentlemen of the Jury, for all acts and declarations of the other persons with whom he conspired." The complaint is that the charge fails to limit the acts and declarations of other persons or conspirators for which Evans could be held responsible as a conspirator. Just prior to this charge, the court defined conspiracy and, while not immediately following, charged explicitly that, if a conspiracy is established, declarations or acts by any of the conspirators during the pendency of the criminal enterprise are admissible in evidence against any member of the conspiracy, but that acts or declarations made after the conspiracy has ended are only admissible against the one making them or doing the acts. We are of the opinion that this charge when considered in context with the entire charge on the question of conspiracy is correct and sufficient in the absence of a request for a more detailed charge on the question. *Jackson v. State,* 219 Ga. 819 (6) (136 SE2d 375). Ground 3 is without merit.

■ Appellant in enumeration 4 contends that the following charge was error: "In other words the corroboration must be not only to the effect that the crime was actually committed by someone, but must almost—also must be such as to connect the defendant with the criminal act." It is clear that the use of the word "almost" was a slip of the tongue and that the judge immediately substituted the word "also" for "almost." This ground is therefore without merit.

■ Enumeration 5 complains of the following charge: "The testimony of one accomplice, if there be more than one in your determination if satisfactory to the jury, may be sufficient corroboration of the testimony of another accomplice in a felony case." In *Williams v. State,* 222 Ga. 208, supra, headnote 11, this court approved this charge. In that case, two accomplices, Evans and Truett, testified. In this case, only one accomplice testified. While the judge might well have omitted this charge, since the question of one accomplice corroborating another was

not involved, the charge could not have been harmful to the defendant because the language "the testimony of one accomplice" is followed by "if there be more than one in your determination." There was not more than one accomplice who testified; therefore, the jury would not under the court's instruction consider the question of corroboration of one accomplice by another.

■ Enumeration 6 contends the following charge was error: "It is necessary therefore you—therefore, for you to determine if there was a conspiracy under the instructions already given you, and if there were whether it had terminated prior to the time of the alleged statements and testimony and acts made by the defendant Wade Truett or any other accomplice if you find any conspiracy." Appellant contends that the court was referring to Truett as a defendant in the case, when he was not, and that the charge is harmful to Evans as it expresses the view of the court that Truett was an accomplice of Evans in the commission of the crime charged. The evidence of Truett was that he, Williams and Evans formed a conspiracy to steal an automobile, that pursuant to the conspiracy the car was stolen, and that the three police officers were killed in the commission of the crime. The court in this charge was referring to the defendant on trial, Alex Evans, and to Wade Truett, whose name he called, and to any other accomplice, who, if he was referring to anyone, would be Williams. We do not think this was an expression of opinion by the court that Truett was an accomplice of Evans. He was making it plain to the jury that they must first find whether a conspiracy existed to which the defendant was a party, and then whether it had terminated before the alleged statements and acts of the defendant, Evans, Truett, and any other accomplice, were made, his purpose being to instruct the jury to disregard such acts and statements if made after the conspiracy had terminated. This ground is without merit.

■ Enumeration 7 excepts to the following charge: "Now Gentlemen, the defendant in this case pleads the defense of alibi. I charge you that alibi as a defense involves the *possibility* of the presence of the accused at the scene of the offense

at the time of its commission, and—at the time of its commission and the range of the evidence in respect to the time and place must be such as reasonably exclude the possibility of the presence of the accused at the time and place of the offense.". *Code* § 38-122 provides that "Alibi as a defense involves the *impossibility* of the accused's presence at the scene of the offense at the time of its commission; and the range of the evidence, in respect to time and place, must be such as reasonably to exclude the possibility of presence." (Emphasis supplied). The court was unquestionably charging this section and either through a slip of the tongue or error of the reporter the word "possibility" was incorporated in the record where "impossibility" was intended. The court followed the excerpt quoted with the following: "If you believe that a crime was committed as charged in this bill of indictment, but you do not believe that this defendant was present at the time and place of such offense, you should acquit upon that ground. Alibi as a defense should be established to the reasonable satisfaction of the jury and not beyond a reasonable doubt." Obviously, the use of the word "possibility" could not have misled the jury when the complete charge on the subject is considered, and is not ground for a new trial. See *Harris v. State*, 191 Ga. 243, 258 (18) (12 SE2d 64) and *Siegel v. State*, 206 Ga. 252 (2) (56 SE2d 512).

■ Enumeration 8 complains of the following charge: "If you should find under the rules given you that the defendant is not guilty of any offense, or if you should have any reasonable doubt in your mind as to his guilt of any offense, it would be your duty to acquit, and the form of your verdict in that event would be 'We the jury find the defendant not guilty.'" The complaint is that under the charge the jury would have to find that the defendant was guilty of no offense before they would be authorized to return a verdict of not guilty.

The court charged only on the offense of murder. No lesser grades of the crime were charged: Just prior to the charge complained of he charged that if "you believe that the defendant, Alex S. Evans, is guilty of murder as charged in the indictment, the form of your verdict would be 'We, the jury find the defendant guilty.'" He then charged that that verdict would

mean the extreme penalty, followed by a charge that they could recommend mercy which would mean a life sentence. The prosecution and the defense tried this case on the theory that defendant was guilty of murder or nothing, and the charge complained of could not have misled the jury into believing that they could find the defendant not guilty, only if they believed he had committed no offense. The issue was whether he was guilty of murder or not, and the jury knew it.

■ Enumeration 9 excepts to the following charge: "You may inquire whether there was any motive on the part of the defendant to induce him to take the life of the deceased, and if so, what that motive was. If you should find that there was no motive on his part to commit the act you may consider that along with all of the other evidence in the case in deciding whether the defendant is guilty or not. *Especially if the evidence relieves the defendant's guilt of all doubt.*" (Emphasis ours.) There is no merit in the contention that the charge was an expression of opinion of guilt on the part of the judge, nor does the charge limit the range of the jury in the deliberation on the issue of motive. This court in considering an almost identical charge held that the charge, fairly considered, was not open to the exception that it assumed that the defendant took the life of the deceased. *Jackson v. State,* 152 Ga. 210, 213 (4) (108 SE 784). The excerpt "Especially if the evidence relieves the defendant's guilt of all doubt" as it appears in the record has no meaning, and neither adds to nor takes anything away from the charge. It did not assume the guilt of the defendant or qualify the range of deliberation of the jury on the issue of motive, as contended by appellant. The ground is without merit.

■ Enumeration 10 alleges that it was error for the court to charge that when testimony on alibi is offered, it is the duty of the jury to take that testimony along with all the other testimony in determining the guilt or innocence of the defendant, and if after doing so, they entertain a reasonable doubt of his guilt they should acquit the defendant, that if the testimony as a whole raises a reasonable doubt of his guilt he should be acquitted. This court in *Wafford v. State,* 163 Ga. 304 (1) (136

SE 49) held it was error not to give such a charge. Furthermore, the jury could not have been misled, as contended by appellant, into thinking that the jury could not acquit on the defense of alibi alone, for the court just prior to this charge complained of had so charged. Ground 10 is without merit.

■ Enumeration 22 complains of the court's refusal to grant defendant's motion for mistrial, because the solicitor general on re-direct examination asked the witness Truett about a conversation had by Williams, Truett, and Evans while on their way to steal the Oldsmobile, which was stolen and which led to the killing of the officers, and Truett answered that in the conversation Evans had discussed "some safe job" that he was planning for them to do.

The defendant's counsel on cross examination had asked Truett what conversation he, Evans and Williams had on the way to Atlanta, what were they talking about, and Truett answered "We all talked about three or four things, talked about the car we were supposed to get." Then the defendant's counsel said: "Let me interrupt you on that, I withdraw that question." Then on re-direct the solicitor general pursued the matter and asked what they had talked about on the trip. The question was objected to, but the court permitted the witness to answer, and it was at this time that he testified that they talked about the Olds they were going to get and about some "safe job" Alex had planned around Duluth. The court denied the motion for mistrial but instructed the jury to disregard the testimony, and give it no consideration, and struck the question and answer from the record. It was not error to deny the motion for mistrial.

■ Enumeration 23 raises the question whether the trial court erred in refusing to permit defendant's counsel after voir dire examination of the jurors to ask a prospective juror the question: "Do you believe that and in your mind at this time, right now, is Alex Evans sitting at this table innocent, an innocent man?"

The juror answered the question as follows: "No, sir—I mean —there is no opinion in my mind as to his guilt. In other words I don't know anything about him, there is no opinion in my mind as to his guilt. In other words he is proven innocent till

proven guilty." The solicitor general objected to the question and the court ruled it improper. In view of the juror's answer, it is clear that asking the question of this juror was harmless. Defendant's counsel stated that he proposed to ask each juror the same question. It was agreed between counsel and the court that the question would be considered asked of each prospective juror and that the court would not permit the question to be answered.

Since the answer of the other jurors might not have been the same as that of this juror, we must rule upon whether the ruling of the court was correct.

This court has not passed upon this specific question, but the Court of Appeals in *Atlanta Joint Terminals v. Knight,* 98 Ga. App. 482 (4) (106 SE2d 417) held that "hypothetical questions involving evidence should be excluded, and no question should be so framed as to require a response from the juror which might amount to a prejudgment of the case." That was not a criminal case, but in *Gunnin v. State,* 112 Ga. App. 720 (2) (146 SE2d 131) the Court of Appeals applied the same rule in a criminal case. We are of the opinion that the conclusion reached by the Court of Appeals is sound and apply it here. The ultimate question is the guilt or innocence of the defendant, and the jurors should not be required to prejudge the case—to find a verdict before hearing evidence. Furthermore, the questions which may be propounded to prospective jurors under the provisions of *Code* § 59-705 are largely within the discretion of the court, and only where that discretion is abused will this court interfere. There was no abuse of discretion on the part of the judge in refusing to permit counsel to ask this particular question.

■ Enumeration 25 alleges error in that the court failed to grant defendant's challenge to a juror, Higgins, who could not state that his verdict would be affected by his relationship to the deceased, Ralph Davis, one of the officers killed at the same time as James S. Everett. It was not shown that the defendant was injured thereby as he used his third peremptory challenge to excuse the juror and used only 19 of his 20 peremptory challenges, and it does not appear that he was compelled to exhaust his peremptory challenges for the purpose of getting rid of this

■

juror, or that he could not challenge other jurors whom he wished to get rid of, or that the State was benefited by such ruling. The burden was upon the defendant to show that he was in some way injured by the ruling, which he failed to do. *Faulkner v. State,* 166 Ga. 645 (6) (144 SE 193). The ground is without merit.

■ Appellant in enumeration 26 complains of the admission in evidence of a statement made by his co-indictee, Vernon Eugene Williams, to the witness Lynwood W. Shaw, the day following the arraignment of Williams, the statement being ". . . if it hadn't been for that dirty son-of-a-bitch, Alex Evans, we wouldn't be in this now."

"After the fact of conspiracy shall be proved, the declarations by one of the conspirators during the pendency of the criminal project shall be admissible against all." *Code* § 38-306. "The rule is that so long as the conspiracy to conceal the fact that a crime has been committed or the identity of the perpetrators of the offense continues, the parties to such conspiracy are to be considered so much a unit that the declarations of either are admissible against the other." *Chatterton v. State,* 221 Ga. 424 (5) (144 SE2d 726). The defendant, and his co-conspirator, Williams, at the time this statement was made, were still concealing their identity, keeping secret the fact that they had killed the deceased, if they had, and denying their guilt. There was evidence sufficient to establish a prima facie case of conspiracy to steal the automobile and the killing of the deceased by the conspirators while carrying out the conspiracy, and the statement by Williams made after the actual commission of the crime, but while the conspiracy continued was admissible. See *Burns v. State,* 191 Ga. 60 (8) (11 SE2d 350); *Thompson v. State,* 58 Ga. App. 593, 597 (199 SE 568); *Coleman v. State,* 141 Ga. 731 (2) (82 SE 228).

■ Enumeration 27 complains that the court erred in overruling defendant's written moiton to exclude and reject the testimony of Wade L. Truett, filed after the solicitor general announced that the witness, an admitted participant in the commission of the offense charged, had been granted immunity from prosecution in the matter. While appellant cites no cases in

support of his contention, and we find no case of this court directly in point, *Howard v. State,* 60 Ga. App. 229, 237 (4 SE2d 418), citing U. S. v. Ford, 99 U.S. 594 (25 LE 399), states that, "It has never been held that one who is guilty of crime cannot be punished merely because others have not been prosecuted or convicted. The extension of immunity to a particeps criminis who has turned State's evidence has existed from time immemorial . . ." and "Such a promise affects only the witness to whom it is made. It is admissible insofar as it affects the credibility of the witness to whom immunity has been promised; beyond this it does not affect the defendant on trial."

As stated in Ingram v. Prescott, 111 Fla. 320 (149 S 369), "From the earliest times, it has been found necessary for the detection and punishment of crime, for the State to resort to the criminals themselves for testimony with which to convict their confederates in crime. . . Therefore, on the ground of public policy, it has been uniformly held that a State may contract with a criminal for his exemption from prosecution if he shall honestly and fairly make a full disclosure of the crime, whether the party testified against is convicted, or not."

The evidence of Truett, the accomplice, was admissible, and the promise of immunity from prosecution goes to his credibility, which is a question for the jury.

The evidence in this case is substantially the same as that in the companion case of *Williams v. State,* 222 Ga. 208, supra, where the relevant testimony can be found. We will not re-state the evidence, except insofar as is necessary to show whether the testimony of the accomplice, Wade L. Truett, as to the participation of the defendant, Alex Evans, in the commission of the crime is corroborated by evidence which is independent of the testimony of the accomplice and which directly connects the accused with the crime. *Lanier v. State,* 187 Ga. 534 (1 SE2d 405).

Specifically the question is whether the testimony of the accomplice, Truett, that he, Williams, and the defendant, Evans, entered into a conspiracy to steal an automobile, a felony, and in the process of carrying out the unlawful act, one or more of them, upon being caught by three Gwinnett County police officers, shot and killed the officers, was sufficiently corroborated.

The testimony of Truett in *Williams v. State,* 222 Ga. 208, supra, as set out in Division 14, was in all material aspects the same in the trial of the defendant Evans.

We now recount the evidence and circumstances that tend to corroborate the testimony of the accomplice Truett. The corroborating evidence in the *Williams* case, (a) through (g), is applicable here, and there is additional corroborating evidence in this case, (h) through (k): (a) On the morning of April 17th, the bodies of the three officers were found in the woods off of Arc Road, each one shot one or more times by bullets and handcuffed together. (b) The wires on the radio of the police car were detached. (c) A 1963 two-door hardtop Oldsmobile (identified by the owner) was found burning. (d) M. J. Vandiver of the Georgia Bureau of Investigation on April 17th found three pistols and two flashlights in a ditch along the side of Beaver Ruin Road. These pistols were identified as belonging to the three dead officers. (e) Mrs. Thomas Stephens and William Bohanon testified that Truett and the defendant came by the home of Stephens on the afternoon of April 16th, 1964, and Bohanon said they were in a white Chevrolet. (f) Witness Meier testified that a damaged 1963 two-door hardtop Oldsmobile was bought by Williams on April 2, 1964. (g) E. F. Willing of Aiken, South Carolina, corroborated Truett's evidence as to the purchase of the Oldsmobile parts by Williams and Truett and their getting him to change the date of the purchase from April 24th to April 2nd and their reason for the change. (h) Lynwood W. Shaw, a prisoner at the Atlanta Federal Penitentiary where Williams was also a prisoner, testified that after Williams returned from court in Gwinnett County, where he went for arraignment hearing, he asked him how he made out—"He said, if it hadn't been for that dirty s.o.b. Alex Evans we wouldn't be in this now." (i) The material and relevant part of the testimony of M. C. Perry, upon which the State principally relies for corroboration, is as follows: ". . . That he had known Williams and Evans 10 to 12 years and Truett 2 years; that he talked to Williams and Evans before the policemen were murdered . . . called Williams on the phone 25-30 days before, at which time he talked to me about stealing some cars for him. I told him I was inter-

ested . . . had to do something . . . was broke. Williams said most of the cars have to go over state lines. I told him I don't want to mess with any cars going over state lines; he told me to go by and see Alex Evans . . . he would know what kind of car I would want. I saw Alex on Thursday or Friday after that and told him I did not want to get cars for Williams as he owed me, and Alex said that if I would get them he would pay me; and I told him when I stepped out of a car or delivered a car I was looking to him for my money. He told me if I would get them he would pay me. Seven or eight days before the murder of the Gwinnett police officers I called and talked to Williams over the telephone. He wanted to know where I had been and if I was going to get cars for him, and I said I didn't care much about doing it, but had to do something, and he said he was needing an Oldsmobile—wanted to know if I could get the Olds. I told him I would. He wanted me to get it that night, but I told him I couldn't but would the next night, so he told me when I got it, to carry it up to Alex's because he wouldn't be in town. He (Williams) in the same conversation asked me if I still had the Olds switch. I told him I thought so and I would look and see if I had it. He (Perry) identified an Olds switch presented to him and explained how the switch worked and that its advantage was that one could crank the car faster. Subsequent to that conversation with Williams, I talked to Alex Evans, the same week of the murder, about him getting cars for Williams . . . told Alex I didn't have the switch, and told him how to crank one without a switch, if I didn't find it. The next conversation with Alex was on April 23rd (after the murder on the 17th) at a filling station. The newspaper came in and Alex was reading the paper, and it was in there about Bozo (Powell) being shot. I asked Alex 'What is Bozo trying to do—get a lot of publicity out of this' and Alex said he figured they had the one that did it; and I said if I wanted to know who did it, I would see mine and your friend. Alex got mad as hell, jumped off the ice box and told me if I thought I knowed anything about it to keep my mouth shut, . . . started punching me in the chest and pushed me back against the counter."

(j)   Evans, in his statement, and his wife, in her testimony as to his alibi, stated that he came home about 8:30 p.m., tended to corroborate the testimony of Truett that he and Williams on their trip to Atlanta to get the Olds, which Evans had located, called Evans' house about 6 p.m. and again about 7 p.m. and were told each time he was not at home, but when they called at 9:30 he was there.

(k)   Truett testified he did not know either of the officers and did not know whether Williams knew them, but that "Alex knew them, or at least they talked like they knew each other, acted like they knew each other very well" and Evans in his statement indicated that he knew the officers.   There is no evidence that the officers knew Williams or Truett.   The evidence that the officers knew Evans tends to corroborate Truett's testimony that Evans was at the scene of the murder, for this accounts for the murderers' changing their plan from tying the officers to a tree to killing them, so that they would not identify Evans as a participant in the murder.

The testimony of the accomplice, Truett, shows that he and Williams were in the auto repair business in Hartsfield, South Carolina, and that they had conspired among themselves to buy new model wrecked automobiles and repair them; and where cars were so badly wrecked, as to make it unprofitable to buy parts to repair with, they would steal identical cars and use parts from them for the repairs; that they bought this 1963 maroon two-door hardtop Olds and on the same day looked around Atlanta trying to find an identical car to steal, but were unable to find one.   His testimony shows further that Alex Evans entered the conspiracy, and he was to steal cars for them, which is corroborated by the testimony of Perry, for Williams talked with Perry about stealing cars for him and delivering them to Evans, and according to Perry's testimony he had agreed to steal cars for Williams to be delivered to Evans, who would pay him for them.   Thus, the conspiracy to steal cars and to steal an Oldsmobile was supported by the evidence.   We are of the opinion that the corroborating evidence as stated in (a) through (k) above meets the requirements of the law as stated in *Lynch v. State*, 158 Ga. 261 (123 SE 289): "To authorize a conviction

based on the testimony of an accomplice, the corroborating circumstances should independently connect the defendant with the offense, and should raise an inference of guilt independently of the testimony of the accomplice." However, ". . . It is not required that this corroboration shall of itself be sufficient to warrant a verdict, or that the testimony of the accomplice be corroborated in every material particular. . . Slight evidence from an extraneous source identifying the accused as a participator in the criminal act will be sufficient corroboration of the accomplice to support a verdict," (*Hargrove v. State*, 125 Ga. 270, 274 (54 SE 164)) and "What shall be the extent of this corroboration is a question to be determined by the jury. It may be strong, or it may be slight; but in each case it must be of such character as to satisfy the minds of the jury as to the connection of the accused with the criminal enterprise." *Rawlins v. State*, 124 Ga. 31, 49, supra. "The quantum of testimony to corroborate the testimony before the jury is a matter addressed entirely to the jury," *Brown v. State*, 163 Ga. 684 (137 SE 31), and "Corroboration is peculiarly a matter for the jury and sufficient corroboration may consist of either direct or circumstantial evidence which connects the defendant with the crime, tends to show his participation therein and would justify an inference of the guilt of the accused independently of the testimony of the accomplice." *Self v. State*, 108 Ga. App. 201 (132 SE2d 548).

We are of the opinion in this case, as we were in *Williams v. State*, supra, that the facts relied upon by the State, as corroborating the testimony of the accomplice, Truett, tended to connect the defendant with the crime of murder and were sufficient to support the conviction of the accused.

It was not error to overrule the motion for new trial.

*Judgment affirmed. All the Justices concur, except Quillian, J., who dissents.*

QUILLIAN, Justice, dissenting. I can not agree with the holding of Division 15 of the opinion. There was, in my opinion, no evidence introduced that corroborated the testimony of Truett before the introduction of the statement attributed to the co-indictee, Williams, by the witness Shaw. Hence, no conspiracy had, at the time of the admission of that evidence, been estab-

lished. His testimony was hearsay and, while the admission of hearsay evidence is not always hurtful, in this instance it obviously was prejudicial to the defendant.

I dissent from the holding of Division 3. The charge excepted to is precisely the same as that held in *Chapman v. State*, 109 Ga. 157 (4), 164 (4) (34 SE 369), to be error. The charge in *Rawlins v. State*, 124 Ga. 31, 49 (16) (52 SE 1), was: "The testimony of an accomplice in a case is not sufficient of itself to convict a party charged with the commission of a crime, under the law; that testimony, in order to authorize you to convict, must be corroborated, and the extent of the corroboration of the testimony is a question entirely for the jury; however strong it may be, or however slight it may be, is a question for you to determine, and you will give it such credit as you believe under the law it is entitled to"; which does not instruct the jury that "slight" evidence is sufficient to corroborate the testimony of an accomplice, but simply that whether slight or strong its sufficiency is for the jury.

The evidence did not corroborate Truett's testimony. In the opinion the main support for the contention that it did are the facts: (1) Evans, in his statement, and his wife, in her testimony as to his alibi, stated that he came home about 8:30 p.m.; while Truett had testified that he and Williams on their trip to Atlanta to get the Olds, which Evans had located, called Evans' house about 6 p.m. and again about 7 p.m. and were told each time he was not at home, but when they called at 9:30 he was there; (2) Truett testified he did not know either of the officers and did not know whether Williams knew them, but that "Alex knew them, or at least they talked like they knew each other, acted like they knew each other very well" and Evans in his statement indicated that he knew the officers.

None of these facts or the several others recited in the majority opinion, according to my view, tended to identify the defendant as the perpetrator of the offense or to show he was present when it was committed. The case of *Allen v. State*, 215 Ga. 455 (111 SE2d 70), a full-bench decision of this court, probably went much further than the opinions of the court had ever gone before in fixing the standard of proof necessary to corrobo-

rate an accomplice, however, while it stands as unquestioned authority I feel compelled to follow it. In reading it, the conclusion seems to me inescapable that the evidence in that case given in corroboration of the accomplice and held by this court insufficient for that purpose was much stronger than in the instant case.

In this connection, with uttermost deference to my colleagues, I am compelled to decide that the mere fact that a defendant admits knowing the deceased does not corroborate testimony of the accomplice Truett, nor do I think the mere fact that there was evidence that the defendant was at home at the hour when Truett testified he engaged in a telephone conversation with the defendant corroborates the fact of such conversation.