23109. CHATTERTON v. THE STATE.

ARGUED SEPTEMBER 14, 1965—DECIDED OCTOBER 7, 1965—
REHEARING DENIED OCTOBER 19, 1965.

428

*David L. Lomenick, J. Donald Bennett,* for plaintiff in error.
*Earl B. Self, Solicitor General, Bobby Lee Cook, Arthur K. Bolton, Attorney General, Rubye G. Jackson, Assistant Attorney General,* contra.

QUILLIAN, Justice. ■ In special ground 1 of the motion for new trial the movant contends he was convicted upon perjured testimony of a named witness. He recognizes that the witness has not been convicted of perjury and that this court has held: "Even though a conviction for crime, procured by perjured evidence and known to be such by the State's prosecuting attorneys, amounts to a denial of due process of law required by the State and Federal Constitutions, yet the Code, § 110-706, which authorizes a new trial when a conviction is based upon perjury and requires that proof of such perjury be made by a judgment of conviction, is not unconstitutional in that it denies due process and equal protection of the law." *Burke v. State,* 205 Ga. 656 (54 SE2d 350). He requests the above mentioned case be overruled and held repugnant to the Fourteenth Amendment to the Constitution of the United States. However, the ground not only fails to show the witness was convicted of perjury but does not allege facts supporting the conclusion that the witness did testify falsely. Certain reconcilable inconsistencies in his testimony are pointed out in the ground but no gross contradiction. The ground is without merit.

■ Special ground 2 complains that the trial judge erred in overruling the defendant's motion for change of venue. The ground alleges that certain "newspaper accounts of the trial, individually and collectively, were extremely prejudicial to his case and prevented him from obtaining a fair and impartial trial as guaranteed by the laws of Georgia and the Constitution of the United States." Some of the most prejudicial matters appearing in said papers are as follows:

Chattanooga News-Free Press, January 18, 1965, "Chatterton has been quoted as saying: 'We hit him with a two-by-four.

Like man he was breathing hard like his nose was stopped up.' Savannah officers said the pair was as cool as 'two boys who had done nothing worse than cross the double yellow.' They said they wanted Copeland to die because 'dead men tell no tales.'"

Chattanooga News-Free Press, January 19, 1965. (a) Quoted defendant Whisman as stating that he "swung the first blow in an attack on Billy Copeland." (b) Quoted witness Billy Fields as testifying that Whisman and Chatterton voluntarily told of the "gruesome killing." (c) Gave the substance of the testimony of fourteen State witnesses called during the first day of the trial. (d) Quoted Woodrow Whisman as saying that "Butch (Chatterton) told him that he would kill him if he did not strike Copeland."

Chattanooga News-Free Press, January 20, 1965. (a) Quoted Whisman as stating in court that he struck the first blow while Chatterton had a gun pointed at him and that he "hit him with the flat of the board so that it would sound louder and Chatterton would not make me hit him again" along with other details of the statement of Whisman at the trial. (b) Quoted in detail the testimony of Billy Fields as to the contents of a confession allegedly made by Whisman and Chatterton, which testimony was also used in the trial of Chatterton.

Chattanooga Daily Times, January 19, 1965. Gave details of the testimony during the first day of Whisman's trial.

Chattanooga Daily Times, January 20, 1965. (a) Related in detail the testimony of Billy Fields as to an alleged confession made by Whisman and Chatterton. (b) The details of the testimony of Dr. Larry Howard regarding the autopsy performed on the body of Copeland.

Chattanooga Daily Times, January 21, 1965. (a) Gave a synopsis of the testimony of the witnesses for the State during the course of the trial. (b) Stated that "Had the jury returned a verdict of guilty with a recommendation of mercy, as the defense asked in its final appeal, Whisman would have received an automatic sentence of life in prison with eligibility for parole in seven years."

The record discloses the State made a counter showing and presented evidence from which it appeared the defendant could obtain a fair trial in the county. Sheriff John F. McConnell

testified: [Direct] "Q. You are the sheriff and familiar with many people, are you not? A. Yes, sir. Q. Do you think a fair trial can be held in this county? A. Yes, sir. Q. Are the people prejudiced or biased? A. No, sir. Q. The deceased was from another county, and we were able to get a jury Monday? A. Right. Q. Do you know of any reason why we couldn't still get one? A. No. Q. The fact of the publicity doesn't make any difference? A. No, sir. Q. A man can still get a fair trial in this county? A. He can get a fair trial."

There was no error in overruling the motion. *Morgan v. State,* 211 Ga. 172 (84 SE2d 365) ; *Grenoble v. State,* 41 Ga. App. 663 (154 SE 304) ; *Blevins v. State,* 108 Ga. App. 738 (134 SE2d 496).

■ Special ground 3 alleges that certain evidence material to the issues of the case was discovered subsequent to the trial. This evidence was that the defendant had counsel appointed for him before he was questioned by the officers. The supporting affidavits required by statute (*Code* § 70-205) were made a part of the ground. These affidavits disclose that the lawyers referred to in the motion were appointed in an entirely different case from the murder case concerning which the defendants were questioned, and that the defendant knew they had been appointed for him months prior to his trial. Hence, it appears the facts were not material and evidence of their existence was not newly discovered. *Dill v. State,* 106 Ga. 683 (5) (32 SE 660).

The ground is without merit.

■ Grounds 4 and 5 of the amended motion complain that challenges to two jurors were overruled. The challenges were upon the ground that the jurors had read newspaper accounts of the co-defendant Whisman's trial and had listened to a news broadcast in which the solicitor general was quoted as stating in reference to his argument in the Whisman case: "I regret that I was unable to tell the jury that if they found the defendant guilty with recommendation of mercy that he would be sentenced to life and could be released in seven years."

There was no evidence that the jurors gave credence to the newspaper articles, were impressed by the remarks imputed to the solicitor general in the broadcast or were influenced adversely to the defendant's case by either the articles or the broadcast. The jurors qualified positively and unequivocally, stating on oath

they were impartial and no prejudice rested upon their minds for or against the accused. The trial judge did not err in denying the challenges and overruling special grounds 4 and 5 of the motion for new trial.

■ The tenth ground of the motion for new trial complains that a statement made by the defendant's accomplice, Whisman, was admitted into evidence. The objection interposed by the defendant was: "I again object to what Whisman said on the grounds that it would be hearsay, statement of a co-defendant against the other, after the act complained of is completed." The statement related solely to Whisman's mental attitude and did not concern the defendant's behavior. However, it was not hearsay because made in the defendant's presence, nor was it inadmissible in that the criminal conspiracy in which the two were engaged had ended. The culprits were still concealing their identity and keeping secret the fact that they had robbed and murdered Copeland. The rule is that so long as the conspiracy to conceal the fact that a crime has been committed or the identity of the perpetrators of the offense continues, the parties to such conspiracy are to be considered so much a unit that the declarations of either are admissible against the other.

The ground is without merit.

■ The eleventh ground of the motion for new trial complains "that the court erred in refusing to permit the defendant, in a hearing out of the presence of the jury, to testify under oath for the limited purpose of showing the involuntary nature of the alleged confessions without subjecting himself to cross examination as to his guilt or innocence of the offense charged." During the progress of the hearing before the trial judge to determine the sole issue of whether confessions made by the defendant were voluntary, "defendant's attorney requested that the defendant be permitted to testify under oath for the limited purpose of showing the involuntariness of the confession and asked for a ruling that defendant could not be cross examined on other matters, but the court ruled that if defendant testified he could be cross examined as to his actual participation in the Copeland case." The ground alleges that the defendant's counsel then stated: "Well in view of the court's ruling, we will let him make

an unsworn statement"; and did not swear the defendant as a witness.

It is not necessary to decide whether, had the defendant been sworn as a witness and examined by his own counsel regarding the one matter then in issue, the voluntariness of the confessions imputed to him, it would have been error for the trial judge to permit the State's counsel to examine him in reference to his participation in the killing of. Copeland. But the statement of the court that he would permit the defendant to be so examined, if he was sworn as a witness, was not a ruling to which exception could be taken. A similar situation was dealt with in the case of *Farrow v. State*, 48 Ga. 30 (3), which held: "The introduction of the prisoner's statement is not such an introducing of testimony as deprives the prisoner of the conclusion, if he introduces no testimony, but we are of the opinion that the statement of the judge, to the effect that, if it was introduced, he would, when the time for the argument came, hold the prisoner not entitled to the conclusion, was not, under the statute, a decision so as to authorize a bill of exceptions." A similar pronouncement of the principle is found in *Barker v. Blount*, 63 Ga. 423 (1).

The ground does not show error.

■ The twelfth and thirteenth grounds of the motion for new trial respectively allege: (12) "Because the record shows on its face that the alleged confession made in the presence of Billy Fields, Randolph Strickland and Patricia Brown on December 22, 1964, was made in violation of defendant's rights as guaranteed by the fifth, sixth, and fourteenth amendments to the Constitution of the United States of America, since it was not voluntarily made"; (13) "Because the record shows on its face that the alleged confession made in the presence of Emmett Whitfield, Jack Knott and Billy Fields on December 27, 1964, and any other dates, along with all statements made to Detective Bill Hart was made in violation of defendant's rights as guaranteed by the fifth, sixth and fourteenth amendments to the Constitution of the United States of America, since it was not voluntarily made."

The grounds do not show any ruling of the court was invoked or pronounced in reference to the admissibility or weight to be given the alleged confessions. The grounds show no error.
■

■ The fourteenth ground of the motion for new trial complains of the admission of evidence. The ground does not set forth the substance of the evidence nor indicate its placement in the record. It does not allege that any objection was interposed to the evidence during the progress of the trial. This case is reviewed under rules of procedure in force before the Act of 1965, Ga. L. 1965, p. 18, as amended Ga. L. 1965, p. 240.

Failure to set forth evidence or refer to its placement in the record was fatal in the present case. Moreover, where no objection to evidence is made during the progress of the trial, either when it is offered or by timely motion to rule it out, no valid exception to its admission can be taken in a motion for new trial or by appeal under either the old or new practice rules.

The ground is without merit.

■ Ground 15 of the amended motion for new trial excepts to the court's charge: "If you find the defendant guilty of the offense of murder, you may return one of two verdicts, either a verdict: we the jury, find the defendant guilty. The effect of which would be the court would sentence the accused to death in manner and form provided by law, or you may return a verdict, we, the jury, find the defendant guilty and recommend mercy. If that verdict is returned, the accused would be sentenced to life imprisonment in the penitentiary. It is a matter wholly within your discretion. You may or may not make a recommendation to mercy, just as you see fit. You are not accountable to any authority for either making or withholding a recommendation to mercy in a capital felony case. The law vests the exclusive right and authority in the jury to either make or withhold a recommendation to mercy." Complaint is made "because the effect of the charge was to instruct the jury that they could not impose a life sentence unless they found that the defendant was entitled to mercy."

Code § 26-1005 as amended, Ga. L. 1963, p. 122, reads: "The punishment for persons convicted of murder shall be death, but may be confinement in the penitentiary for life in the following cases: If the jury trying the case shall so recommend, or if the conviction is founded solely on circumstantial testimony, the presiding judge may sentence to confinement in the penitentiary for life. In the former case it is not discretionary with the judge;

in the latter it is. . . Whenever a jury, in a capital case of homicide, shall find a verdict of guilty, with a recommendation of mercy, instead of a recommendation of imprisonment for life, in cases where by law the jury may make such recommendation, such verdict shall be held to mean imprisonment for life." For construction of *Code Ann.* § 26-1005 see *Ledford v. State,* 219 Ga. 262, 263 (1) (132 SE2d 777).

We hold the charge is patently not subject to the criticism made in the ground.

■ Ground 16 of the amended motion alleges: "The court erred in failing to charge the jury that the punishment for murder is confinement in the penitentiary for life 'if the jury trying the case shall so recommend' such provision being an essential part of the statute providing for the punishment for murder." There was no request for the charge and the judge in the general charge fully covered the subject.

The ground is without merit.

■ Ground 19 is upon the ground that there was subsequent to his trial new and material evidence discovered, to wit: "that the grand jury which returned the indictment against him, charging him with the offense of a capital felony, to wit: murder of Billy A. Copeland, that said indictment is null and void as hereinafter stated; that said grand jury, who returned said indictment were not legally drawn for service in open court as required by law, Georgia Code 1933, § 59-203 provides, 'The judges of the Superior Court, at the close of each term, in open court, shall unlock the (jury) box, and break the seal and cause to be drawn from the compartment number (one) not less than eighteen nor more than thirty names to serve as grand jury at the next term of the court." The ground alleges that for certain reasons the evidence could not have been discovered before indictment by the defendant or his counsel.

The ground does not allege that the evidence could not, through diligence of counsel, have been discovered prior to the trial of the case. The principle is pronounced in *Hall v. State,* 215 Ga. 375, 376 (110 SE2d 661) : "There is not attached to the extraordinary motion for a new trial any affidavit by the movant, or any affidavit by counsel representing him on his trial, to the effect that they did not know of the matters and things set forth in his ex-

traordinary motion at the time he was tried and could not have discovered them by the exercise of reasonable diligence. Such affidavits are essential to an extraordinary motion for new trial where newly discovered evidence is relied on. *Code* § 70-205; *Redding v. State,* 183 Ga. 704 (189 SE 514); *Mills v. State,* 193 Ga. 139 (17 SE2d 719); *Taylor v. Perdue,* 206 Ga. 763 (58 SE2d 902); *Hart v. State,* 207 Ga. 599 (63 SE2d 390). . .

"Grounds relied on for showing illegality of the grand jury returning an indictment should be by a proper challenge to the array of grand jurors before the indictment is found, where the illegality is known, or if not known by the defendant or his attorney before indictment, by plea in abatement to the indictment. Where there is neither challenge to the array nor plea in abatement, such questions can not be raised for the first time in a motion for new trial. *Edwards v. State,* 121 Ga. 590 (2) (49 SE 674); *Lumpkin v. State,* 152 Ga. 229 (7) (109 SE 664); *Cornelious v. State,* 193 Ga. 25, 30 (5) (17 SE2d 156); *Williams v. State,* 199 Ga. 504, 507 (3) (34 SE2d 854)."

The ground shows no error.

*Judgment affirmed. All the Justices concur, except Mobley, J., not participating for providential cause.*