25385. PARK v. THE STATE.

ARGUED SEPTEMBER 8, 1969—DECIDED OCTOBER 3, 1969—REHEARING DENIED OCTOBER 8, 1969.

*Wesley R. Asinof*, for appellant.

*Nat Hancock, George D. Lawrence, District Attorneys, Arthur K. Bolton, Attorney General, Harold N. Hill, Jr., Executive Assistant Attorney General, Marion O. Gordon, Mathew Robins, Assistant Attorneys General*, for appellee.

Nichols, Justice. 1. Assuming that the motion was timely filed, under the decision in *Morgan v. State*, 211 Ga. 172 (84 SE2d 365), and the numerous citations included therein, it was not error to deny the defendant's motion for a change of venue in the absence of a showing that the defendant could not obtain a fair and impartial jury in Jackson County.

(a) Nor, assuming that the motion was timely filed, did the trial court err in refusing to disqualify two special prosecutors on the ground that they had previously represented the accused, since under the evidence on such issue the trial court was authorized to find that they did not represent the accused except as to a matter separate and distinct from the matter under review, and it did not involve any confidential communications with reference to any issue involved in the present case. Compare *Tucker v. Murphy*, 114 Ga. 662, 665 (40 SE 836).

(b) The remaining ground of disqualification of these two special prosecutors was that they were representing the widow of the deceased in a civil action against the defendant and others arising as a result of the alleged murder. While we have found no Georgia case directly in point, it has been held that this alone is not ground for disqualification of a prosecuting attorney. See 27 CJS 665, District and Prosecuting Attorneys, § 12 (6). Although some states have enacted statutes prohibiting such assistance (see 42 AmJur 243, Prosecuting Attorneys, § 10), in the absence of a statutory prohibition, since the conviction or acquittal of the criminal charge would not be admissible on the trial of the civil case, the mere fact that the attorneys are representing the widow of the deceased in

620

the civil action would not disqualify them from assisting in the criminal prosecution.

2. Enumerations of error numbered 3 through 14 all complain of the excusing of prospective jurors who stated that they were conscientiously opposed to capital punishment. In no instance was a prospective juror excused merely for answering affirmatively that he or she was conscientiously opposed to capital punishment, but the prospective jurors were further questioned and a showing made that they could under no circumstances vote for a death penalty or that their belief would prevent them from making an impartial decision as to the defendant's guilt. Under such circumstances the excusing of such prospective jurors was not in conflict with the decision in Witherspoon v. Illinois, 391 U. S. 510 (88 SC 1770, 20 LE2d 776), but in accordance with such decision. See also *Whisman v. State,* 224 Ga. 793 (164 SE2d 719) ; *Miller v. State,* 224 Ga. 627, 636 (163 SE2d 730) ; *Furman v. State,* 225 Ga. 253 (1) (167 SE2d 628).

3. Enumerations of error numbered 26 and 27 complain that two jurors were placed upon the defendant, and the defense was forced to accept them as jurors since they had exhausted their strikes, when such jurors were disqualified as having stated that they had fixed opinions. An examination of the record concerning the questions asked these jurors dealing with their qualifications shows an extreme effort to be honest in the answers given to the questions propounded by both counsel for the State and the defendant, and regardless of opinions previously expressed or feelings toward the deceased and his family, in the final analysis they stated that their opinions were not so formed that they could not give a fair and impartial hearing to the evidence presented and base their verdict on such evidence and not on a preconceived opinion. Neither was disqualified. See *Roach v. State,* 221 Ga. 783 (2) (147 SE2d 299), and citations.

4. Enumerations of error numbered 15, 16 and 17 complain of the admission of declarations of two of the alleged co-conspirators inculpating Park. The questions presented by these enumerations of error were passed upon on the prior appearance of the case in this court adversely to Park except the question presented that the decision in Bruton v. United States, 391

U. S. 123 (88 SC 1620, 20 LE2d 476) requires a different result. In that case the court expressly did not rule upon recognized exceptions to the hearsay rule in its decision excluding confessions of co-conspirators not made in the presence of the accused and subject to cross-examination because such confesions are related in court by someone other than the one confessing such crime. The decision in Bruton v. United States does not require a ruling contrary to prior ruling by this court on the first appearance of the case. Nor does such decision require a different ruling on the questions presented in the 21st and 22nd enumerations of error which complain of the admission of conversations between co-conspirators one of which was the witness.

5. On the first trial of the case John Hyman Blackwell and Loyd George Seay, both co-indictees, testified for the State and were cross examined by the defendant's attorney. On the second trial both witnesses refused to testify relying on the Fifth amendment privilege against self-incrimination. Thereafter, over the defendant's objection, the prior testimony of these witnesses was read to the jury. Later Seay was again called to the stand and orally testified to the same facts as had been previously read from the transcript of his prior testimony. Enumerations of error numbered 18 and 20 complain of the reading of the transcripts of the first trial.

In support of these enumerations of error the defendant relies upon cases exemplified by Barber v. Page, 390 U. S. 719 (88 SC 1318, 20 LE2d 255), where the testimony read to the jury was taken from a preliminary hearing where the defendant was not represented by counsel and the State had made no attempt to secure the witness so that he could be orally examined and cross examined by the defendant's counsel. Here while the witnesses were physically present in the courtroom they refused to testify. Each witness had been examined and thoroughly cross examined by defendant's counsel at the prior trial, and no right of confrontation of the witness was denied.

*Code* § 38-314 provides: "The testimony of a witness, since deceased, or disqualified, or inaccessible for any cause, given under oath on a former trial, upon substantially the same issue

and between substantially the same parties, may be proved by anyone who heard it, and who professes to remember the substance of the entire testimony as to the particular matter about which he testifies." The question presented is, is a witness inaccessible when he is present in the courtroom but refuses to testify? In *Smith v. State*, 147 Ga. 689 (95 SE 281), it was held that, where a witness who had testified on a former trial of the accused and had been cross examined moved from the State and refused to return and testify, the former testimony could be read to the jury. See also *Burns v. State*, 191 Ga. 60 (11 SE2d 350). The refusal to testify by a witness on the stand makes his testimony just as inaccessible as his refusal to return to the State. It was not error to permit the former testimony of these witnesses to be read to the jury. Compare People v. Pickett, 393 Mich. 294 (63 NW2d 681, 45 ALR2d 1341).

6. The nineteenth enumeration of error complains of the refusal of the trial court to declare a mistrial after the State asked Loyd George Seay if he had been offered money not to testify in the present case. The witness answered the question in the negative but later, during the trial when the witness was again placed on the stand, he testified that he was offered $10,000 to repudiate his former testimony. It was not error to overrule the motion for mistrial.

7. Enumeration of error number 23 complains that only eleven of the twelve jurors were polled in accordance with the request that the jury be polled after the verdict was announced.

While the transcript of the trial lists eleven jurors who were polled, yet the record transmitted to this court includes a certificate of the trial court, authorized by the Act of 1965 (Ga. L. 1965, pp. 18, 24; *Code Ann.* § 6-805 (f)), showing that all twelve jurors were polled. Accordingly, this enumeration of error presents no question for decision inasmuch as the trial court's certificate is a final determination of what took place on the trial of the case. To hold otherwise would place the appellate court in the position of a trior of fact to determine what occurred in the trial court.

8. On the first appearance of this case before this court, it

was held that the evidence was sufficient to authorize the verdict of guilty. On the second trial the evidence was at least as strong as on the first trial and amply authorized the verdict, and no error of law appearing, the verdict and sentence of the trial court must be affirmed.

*Judgment affirmed. All the Justices concur, except Felton, J., who dissents.*

FELTON, Justice, dissenting. In my opinion, the majority of this court has misconstrued the provisions of *Code* § 38-314, so as to make the phrase "inaccessible for any cause" modify "testimony," rather than "witness." That statute begins as follows: "The testimony of a witness, since *deceased,* or *disqualified,* or inaccessible for any cause. . ." (Emphasis supplied.) It is difficult to comprehend how "testimony" could become deceased or disqualified. It is obvious to me that the statute is referring to the inaccessibility of the *witness,* rather than of the testimony. This is the construction this court has already given this statute. See *Tillman v. Fontaine,* 98 Ga. 672, 677 (27 SE 149), citing *McElmurray v. Turner,* 86 Ga. 215 (12 SE 359); *Cantrell v. Byars,* 71 Ga. App. 287 (2) (30 SE2d 643) and cit.; *Standridge v. Standridge,* 224 Ga. 102, 103 (160 SE2d 377) and cit. Regardless of the construction given similar statutes by courts of other jurisdictions and regardless of the merit of such a provision, the meaning of our statute is plain, unambiguous and settled by case law; hence, any change in this regard must be effected by our General Assembly, rather than by our courts. The witnesses in the instant case were present in the courtroom; therefore, they were not "inaccessible," so as to make their testimony given on the former trial admissible.

Under the proper construction of the above Code section, therefore, witness Seay's former testimony was not admissible because of his refusal to answer certain questions on the ground that they might incriminate him. Even if the admission of the former testimony at that point was justified under the majority's construction of the statute, however, when the witness later testified as to substantially the same facts, the former testimony thereby became merely hearsay evidence.

Blackwell was sworn in as a witness, gave his name and current place of confinement, refused to answer where he was living on the day of the murder on the ground that it might incriminate him and was then called down from the stand. On the next day he was recalled to the stand, where he again gave his name and residence (the State penitentiary). He again refused to answer as to his residence on the day of the murder on the same ground, as well as refusing to answer whether or not he had talked to any attorney since he had been in that area, whether or not he had talked to attorney Winfred Smith (whom he admitted knowing within the last few days), whether or not he had seen Smith in the courthouse that day, whether or not he had had an attorney in January, 1968, whether or not he had been advised of his rights, and whether or not he would submit to an oral examination, whereupon the court held him in contempt of court. The witness then answered that he declined to answer any questions which the State might ask him. The court stated that the witness could be asked more questions, but the State's attorney said that he "wouldn't know what to ask." At this point, the witness's former testimony was admitted in evidence over objection.

The privilege against self-incrimination may not be asserted in advance of questions actually propounded. See *Chastain v. State*, 113 Ga. App. 601 (3) (149 SE2d 195) and cit.; charge approved in *Wilbanks v. Wilbanks*, 220 Ga. 665, 668 (141 SE2d 161); U. S. v. Harmon, 339 F2d 354 (C. A. Mich. 1964), cert. den. 380 U. S. 944 (85 SC 1025, 13 LE2d 963), reh. den. 380 U. S. 989 (85 SC 1330, 14 LE2d 282); 98 CJS 250, Witnesses, § 436; Modern Federal Practice Digest, Witnesses, Key no. 307 and cases annotated therein. "The propriety of a witness' refusal to answer a question as incriminating depends on an examination of the *particular question* in the light of all of the surrounding circumstances." (Emphasis supplied.) 98 CJS 257, Witnesses, § 437.

Although witness Blackwell stated that he would not answer any more questions, both the court and the State expressly recognized the right, if not the duty, of propounding additional questions to the witness, the only reason for not doing so being

the State's not knowing what to ask. Although it might appear to have been a useless technicality to require the asking of specific questions following the witness' stated intention not to answer any questions, nevertheless, under the authorities above cited, this was the proper procedure. Unless the State propounds the same questions as were propounded at the former trial and invokes a ruling by the court on the witness' assertion of privilege as to each individual question, the proper groundwork has not been laid for the admission of the former testimony, since it does not otherwise appear to which specific testimony the witness is asserting his privilege. All of the testimony may not be, or even be claimed to be, privileged.

Thus, even if Blackwell's former testimony would have been admissible under the majority's construction of *Code* § 38-314 and a proper application to that statute of the Fifth Amendment privilege, nevertheless, the court still erred in admitting the former testimony before the State had obtained rulings by the court as to the privileged or unprivileged status of the specific testimony sought to be elicited. The exact above procedure is required to render the witness' testimony inaccessible even under the majority's construction of that Code section. I would reverse the judgment of conviction on this ground.