## 28037. BENNETT v. THE STATE.

PER CURIAM. The appellant, Charles Bennett, was indicted jointly with Herbert Smith, James Lingerfelt and Marcus Ratledge for the murder of Deputy Sheriff William Cantrell, and for the murder of Officer Larry Mulkey. These two law enforcement officers of Forsyth County were killed in the early morning hours of January 10, 1972, by multiple gunshot wounds inflicted upon them. Their bodies were discovered locked in the trunk of the police car used by them. At the time of their death, they were engaged in investigating a burglary which had occurred in Forsyth County on January 8, 1972, and were struck down while performing their duty. Following the discovery of the murders of these two law enforcement officers on January 10, 1972, a police alert was instigated for an automobile with a license plate bearing a specific number found written in the police car used by the two officers. This automobile was located in Atlanta and officers in that city took the car and its driver, Marcus Ratledge, into custody. The weapon used to inflict the fatal wounds on the two officers was found in the possession of Marcus Ratledge,

along with merchandise and goods taken during the commission of the burglary being investigated by the two officers, and several items taken during another burglary which occurred three days earlier in Forsyth County. Further investigation by local and state law enforcement officers disclosed evidence which implicated James Lingerfelt, Herbert Smith and the appellant in this case, Charles Bennett, in addition to Marcus Ratledge, the driver of the car. All of the suspects were taken into custody on February 4, 1972.

The present appeal deals only with the case of Charles Bennett, who, after trial and conviction, was sentenced to death. He has appealed his conviction and sentence to this court on several grounds.

Bennett was tried separately and at his trial the state introduced into evidence the testimony of Herbert Smith, one of the alleged co-conspirators, which he gave at a prior commitment hearing. Smith was called to the witness stand and the prosecuting attorney read to the court and jury Smith's earlier testimony from the commitment hearing, pausing periodically to inquire if Smith had so testified. At that time, Smith had been indicted for the murders but had not then been tried. So Smith responded to the prosecutor's questions by asserting his right to remain silent under the Fifth Amendment to the Constitution of the United States. The record indicates that Bennett had been present at the commitment hearing and that his counsel was given, and made use of, the opportunity to cross examine Smith at that time. His testimony at the earlier commitment hearing tended to prove the acquaintance of all the alleged co-conspirators and to establish their presence in the area of the two burglaries in Forsyth County prior to the homicides of the two officers. At Bennett's trial, his counsel objected to the prosecutor's method of questioning Smith on two grounds: (1) the evidence was hearsay and this questioning denied Bennett his right to confront the witness because Smith remained silent; and (2) this questioning denied Bennett his right to a fair trial because the prosecuting attorney knew Smith would assert his right to remain silent but nevertheless placed him on the witness stand to prejudice the trial jury into believing "the defendant (Bennett) must be guilty because his co-defendants are claiming the Fifth Amendment right."

The state also introduced into evidence in the trial of Bennett's case a statement not under oath made by James Lingerfelt while

in custody after his arrest on February 4, 1972. Lingerfelt, who was also an alleged co-conspirator under indictment for murder was called and advised by the trial court of his right to remain silent. The prosecuting attorney called Lingerfelt to the witness stand and asked him if he had talked with Agent Bert Frye of the Georgia Bureau of Investigation on February 4, 1972. Lingerfelt asserted his right to remain silent and declined to answer. The state's counsel then commenced to read aloud the alleged statement made by Lingerfelt, while in custody, to Agent Frye, pausing at intervals to inquire of Lingerfelt if he had so stated. At each pause, Lingerfelt refused to answer. Bennett's defense counsel objected to this questioning of Lingerfelt on the same grounds which were used in objecting to the questioning of Herbert Smith. The alleged statement made by Lingerfelt implicated the appellant, Bennett, in the murders of the two officers but indicated that Bennett had told Lingerfelt that Marcus Ratledge had done the actual killing.

Finally, the state introduced into evidence an alleged statement of Marcus Ratledge made while he was in custody shortly after his apprehension on January 10, 1972. However, Ratledge was not called as a witness for the state, and the record does not disclose his unavailability as a witness. Instead, Dectective Russell, of the Atlanta Police Department, was called and allowed to read into evidence the alleged statement of Ratledge. Appellant's counsel objected to this statement on the grounds: (1) no showing of conspiracy had been made that would allow the statement into evidence; and (2) the statement was hearsay and Bennett was deprived of his right to confront this witness against him. The alleged statement of Ratledge indicated that he had been with appellant Bennett at the time of the shooting of the two officers and Bennett was actually the one who had shot the officers. All of this testimony was received as affirmative evidence by the court over defense counsel's objection at the trial of appellant Bennett.

The main issue for decision on this appeal is whether the admission into evidence of this testimony — Smith's commitment hearing testimony and the alleged statements of Lingerfelt and Ratledge — constituted a denial of appellant Bennett's right to confront witnesses against him. Other questions arising out of the trial must be decided, but the confrontation issue is the backbone of the appeal. *Held:*

1. An examination of the record in this case discloses that the

statement of James Lingerfelt was made prior to the expiration of a conspiracy involving the appellant and Lingerfelt and was admissible under Code § 38-306. The exception to the hearsay rule embodied in that Code section was the subject of review by the U. S. Supreme Court in the case of Dutton v. Evans, 400 U. S. 74 (91 SC 210, 27 LE2d 213). The Dutton case dealt with a murder conviction in Georgia, previously affirmed by this court in *Evans v. State,* 222 Ga. 392 (150 SE2d 240), in which the declaration of a co-conspirator was admitted into evidence at the trial. It was an out-of-court, unsworn statement, and the defense attorney had no opportunity there to cross examine the declarant on the truthfulness of the statement. Nevertheless, the Supreme Court of the United States rejected the contention that this testimony was hearsay and violative of the defendant's constitutional right of confrontation. We hold that the statement of the co-conspirator Lingerfelt in this case was admissible under Georgia's conspiracy exception to the hearsay rule. See also, *Chatterton v. State,* 221 Ga. 424 (5) (144 SE2d 726), and *Hutchins v. State,* 229 Ga. 804 (194 SE2d 442).

The commitment hearing testimony of Herbert Smith was admissible at appellant's trial under the provisions of Code § 38-314. See California v. Green, 399 U. S. 149 (90 SC 1930, 26 LE2d 489). Thus no error is shown here by the admission of this testimony.

The record is not entirely clear as to the unavailability of Marcus Ratledge as a witness. It was necessary that his unavailability be established before his statement could be admitted into evidence. *Park v. State,* 225 Ga. 618 (170 SE2d 687). However, even if it were error to admit the statement of Ratledge, it was harmless error beyond a reasonable doubt in view of the other clearly admissible evidence which established ·the defendant Bennett's guilt. See Chapman v. California, 386 U. S. 18 (87 SC 824, 17 LE2d 705, 24 ALR3d 1065); Harrington v. California, 395 U. S. 250 (89 SC 1726, 23 LE2d 284); and *Morgan v. State,* 231 Ga. 280.

2. The appellant contends he is entitled to a new trial because of an erroneous instruction to the jury by the trial court. The charge complained of is as follows: "It is further contended by the State in this case that certain statements were made in the presence and hearing of the defendant, Charles Bennett, as to the offense and how it was done, and that the defendant failed to make any answer, failed to make any denial or protest under

conditions which require such actions. In this connection, the court charges you that acquiescence or silence when the circumstances require an answer, or the denial or other conduct; may amount to an admission. Whether such statements were made in the presence and hearing of the defendant, Bennett, whether or not the circumstances were such as to require an answer, or to require a denial by him, wherein Charles Bennett failed to answer or deny, and whether such failure, if any, amounted to an admission on his part, are matters for you, gentlemen, to determine."

The appellant argues (1) this charge was not adjusted to the evidence and (2) this charge is unconstitutional in that it would tend to deny appellant's Fifth Amendment right to remain silent and have no inference of guilt drawn therefrom.

The evidence authorized the charge and it was not error in the circumstances of this case. See *Bloodworth v. State,* 216 Ga. 572 (3) (118 SE2d 374); Code § 38-409. Such a charge has been previously approved by this court.

3. The other enumerations of error have been reviewed by the court and found to be without merit. Since the evidence authorized the conviction and no error of law appears, the judgment of the trial court relating thereto must be affirmed. The defendant was sentenced to death on April 12, 1972. This sentence was not a sentence that could lawfully be imposed on that date. Stewart v. Massachusetts, 408 U. S. 845 (92 SC 2845, 33 LE2d 744); *Sullivan v. State,* 229 Ga. 731 (194 SE2d 410). The judgment on the sentence in this case is, therefore, reversed with direction to the trial court to enter a judgment sentencing the defendant to be imprisoned for the balance of his life as provided in *Sullivan,* supra, and campanion cases.

*Judgment affirmed in part; reversed with direction in part. All the Justices concur, except Undercofler, Gunter and Ingram, JJ., who dissent. Grice, P. J., and Nichols, J., concur specially.*

SUBMITTED JUNE 22, 1973 — DECIDED NOVEMBER 29, 1973.

*Brannon, Brannon & Thompson, Robert B. Thompson,* for appellant.

*C. B. Holcomb, District Attorney, Arthur K. Bolton, Attorney General, Courtney Wilder Stanton, B. Dean Grindle, Jr., Assistant Attorneys General,* for appellee.

NICHOLS, Justice, concurring specially. I concur in the judgment in this case but not in all that is said in the majority opinion.

The testimony of Smith was admissible under the decisions of this court in *Park v. State,* 225 Ga. 618 (170 SE2d 687) and Code § 38-314, for such testimony had been subject to cross examination by the defendant's counsel at the commitment hearing.

The prior statements of Lingerfelt and Ratledge, not amounting to confessions, were admissible as statements made during the pendency of the conspiracy under Code § 38-306, as recognized in Dutton v. Evans, 400 U. S. 74 (91 SC 210, 27 LE2d 213).

While the method of presenting such evidence, reading a part of such statement and asking the witness if he had so stated, may be subject to criticism it does not constitute reversible error.

I am authorized to state that Mr. Presiding Justice Grice concurs in this special concurrence.

INGRAM, Justice, dissenting. The majority opinion of the court plainly overlooks, or ignores, the compelling and essential demands of the Georgia and United States Constitutions as they must be applied to the facts of this case. To place all of the primary issues in proper perspective, it is necessary to review briefly the evolution of several U. S. Supreme Court pronouncements in this area of our law.

Art. I, Sec. I, Par. V of the Georgia Constitution of 1945 and the Sixth Amendment of the United States Constitution contain the right of an accused in a criminal prosecution to be confronted with the witnesses against him. For 174 years the Sixth Amendment was considered by the Supreme Court of the United States not to be applicable to the several States of the Union. E. g., see Stein v. New York, 346 U. S. 156, 195 (73 SC 1077, 97 LE 1522). In April, 1965, this view met its demise when the U. S. Supreme Court, in Pointer v. Texas, 380 U. S. 400, 403 (85 SC 1065, 13 LE2d 923), decided "the Sixth Amendment's right of an accused to confront the witnesses against him is . . . a fundamental right and is made obligatory on the States by the Fourteenth Amendment." Since the year of Sixth Amendment application to the state, a number of decisions have been rendered by the U. S. Supreme Court dealing with the right of confrontation and they have to be confronted in this case.

I agree that the confrontation clause cannot be read literally for to do so would allow testimonial evidence only through witnesses present in court. All hearsay evidence would thereby be excluded and recognized exceptions to the hearsay rule would be lifeless. We learned long ago from Mattox v. United States, 156 U. S. 237, 240 (15 SC 337, 39 LE 409), that this was not the intended effect of the

Sixth Amendment. The case of Pointer v. Texas, supra (p. 404), applying the confrontation clause to the states, gives us one of the first insights into how this important doctrine is now being viewed. In that case, the U. S. Supreme Court observed that, "It cannot seriously be doubted at this late date that the right of cross examination is included in the right of an accused in a criminal case to confront the witnesses against him." The court further noted that "a major reason underlying the constitutional confrontation rule is to give a defendant charged with crime an opportunity to cross examine the witnesses against him." Id., p. 406. On the same date that Pointer v. Texas, supra, was decided, the court also decided Douglas v. Alabama, 380 U. S. 415 (85 SC 1074, 13 LE2d 934). There, Douglas and an alleged accomplice were tried separately, for assault with intent to murder, in an Alabama State Court. The state called the accomplice as a witness at Douglas' trial but he repeatedly refused to testify on the ground of self-incrimination. Over defense objection, the prosecutor was allowed to read in the presence of the jury a purported confession by the accomplice which implicated Douglas in the crime. This was allowed by the trial court on the prosecutor's asserted basis of refreshing the recollection of the witness. However, the witness refused to answer the prosecutor's questions. Three law en-. forcement officers then identified the purported confession signed by the accomplice but the document itself was not offered in evidence. Douglas was convicted and the Alabama appellate court affirmed his conviction. On appeal, the U. S. Supreme Court reversed and concluded in its majority opinion that, under the circumstances, Douglas' inability to cross examine the alleged accomplice as to the purported confession denied him the right of cross examination secured by the confrontation clause. The court went on to note that the opportunity to cross examine the police officers was not "adequate to redress this denial of the essential right secured by the confrontation clause." Id., p. 420. Cross examination of the police officers on the question of the genuineness of the confession "could not substitute for cross examination of (the alleged accomplice) to test the truth of the statement itself." Id., p. 420.

Thus, in these two cases, Pointer v. Texas, 380 U. S. 400, and Douglas v. Alabama, 380 U. S. 415, supra, the U. S. Supreme Court determined that the right of cross examination was strongly identified with the right to confrontation, and indicated that, as a general rule, only non-hearsay evidence may be used in criminal

trials in the absence of opportunity for cross examination.

Further enlightment came in California v. Green, 399 U. S. 149 (90 SC 1930, 26 LE2d 489). In that case, the U. S. Supreme Court considered a California conviction involving admissibility of a prior inconsistent statement of a witness made under oath and subject to cross examination. The court said in its opinion, ". . . there is good reason to conclude that the confrontation clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross examination." Id., p. 158.

In Dutton v. Evans, 400 U. S. 74 (91 SC 210, 27 LE2d 213), relied on by the majority opinion, the U. S. Supreme Court had an opportunity to review a murder case tried in Georgia dealing with the declaration of a co-conspirator and it decided the admission of this evidence, allowed under Code § 38-306, did not violate the confrontation clause of the Sixth Amendment. At the trial a prosecution witness testified to a statement made to him by one of the alleged accomplices in the crime. He testified that after the alleged accomplice had been arraigned in the state court and been returned to the Federal penitentiary the alleged accomplice said that "if it hadn't been for [the defendant], we wouldn't be in this now." Dutton v. Evans, supra, pp. 77. Defense counsel objected to this testimony as being hearsay, and violative of defendant Evans' right of confrontation. This court previously held the evidence admissible under Code § 38-306, which allows admission of declarations made by co-conspirators after the actual commission of the crime, but while the conspiracy continues (for concealment). See Evans v. State, 222 Ga. 392, 402 (150 SE2d 240). Though this was an out-of-court statement which was not under oath and was not subject to cross examination, the U. S. Supreme Court agreed that the admission of this statement did not violate the confrontation clause. It is significant, however, that there were numerous other prosecution witnesses (19) in the Dutton case, one of whom (another alleged accomplice) gave detailed eyewitness testimony of the crime and the participation of the alleged accomplices who made the declaration as well as defendant Evans. The evidence admitted there, as an exception to the hearsay rule without opportunity for cross examination, was not the main thrust of the prosecution's case relied on for conviction. It was only a small part of the picture, and it had the ring of reliability about it because it was spontaneous and against the interest of the person who made it. Thus, "the trier of fact [had] a satisfactory basis for

evaluating the truth of the prior statement." California v. Green, 399 U. S. 149, supra, p. 161. The indicia of reliability, noted by the Supreme Court in Dutton v. Evans, supra, in approving the admission of such a declaration, were: that it was not made in the coercive atmosphere of official interrogation; that it did not involve assertions about past facts and that under the circumstances there was no reason to believe it was not truthful (it was against the interest of the declarant); and, that it was a spontaneous declaration. See Dutton v. Evans, 400 U. S. 74, 87-89, supra. As I noted in the dissent filed in *Morgan v. State,* 231 Ga. 280, Dutton is basically a "harmless error" decision of a fragmented and divided court in that case. This is indicated by the majority's observation in that case that the declaration was not "crucial" or "devastating."

One additional case must be noted with regard to the confrontation issue, and it is Mancusi v. Stubbs, 408 U. S. 204 (92 SC 2308, 33 LE2d 293). The U. S. Supreme Court in that case predicated the use of hearsay declarations upon the bona fide unavailability of the witness. In doing so, it relied upon its earlier holding in Barber v. Page, 390 U. S. 719 (88 SC 1318, 20 LE2d 255), and stated that in order to introduce hearsay statements of an absent declarant, the state must show both that he was legitimately unavailable and that the hearsay statements bear strong indicia of reliability.

Although the conviction in Douglas v. Alabama, 380 U. S. 415, supra, was reversed by the U. S. Supreme Court on the confrontation question it also prohibits a prosecuting attorney from calling a witness, as a co-conspirator, to the stand in the jury's presence and reading aloud his alleged statement, incriminating the defendant on trial when the prosecutor knows the witness will refuse under the Fifth Amendment to testify about the statement. The court noted (p. 420), that "the circumstances are therefore such that 'inferences from a witness' refusal to answer added critical weight to the prosecution's case in a form not subject to cross examination, and thus unfairly prejudiced the defendant.' Namet v. United States, 373 U. S. 179, 187. See also Fletcher v. United States, 118 U. S. App. D. C. 137, 332 F2d 724 (1964)." See also Commonwealth v. Granito, 326 Mass. 494 (95 NE2d 539); Washburn v. State, 164 Tex. Cr. 448 (299 SW2d 706); and De Gesualdo v. People, 147 Colo. 426 (364 P2d 374, 86 ALR2d 1435).

Therefore, in my opinion, the minimum requirements to authorize admission of hearsay declarations of an alleged co-

conspirator may be fairly stated as follows:[1]

1. There must be sufficient preliminary proof of a conspiracy. Hearsay declarations may not be introduced pending proof of the conspiracy (by evidence independent of the declarations). If not proved, the acts and declarations of an alleged co-conspirator are inadmissible. Code § 38-306; *Park v. State,* 224 Ga. 467 (162 SE2d 359); and *Lanier v. State,* 187 Ga. 534 (1 SE2d 405). Cp. Carbo v. United States, 314 F2d 718 (9th Cir. 1963), cert. den. 377 U. S. 953 (1964).

2. The witness, as co-conspirator, must be genuinely unavailable. Mancusi v. Stubbs, 408 U. S. 204, supra. This requirement may be satisied in several ways. One way is for the state to establish to the court out of the presence of the jury that the witness will refuse to testify under his Fifth Amendment right to remain silent. See *Park v. State,* 225 Ga. 618 (170 SE2d 687).

The witness, as a co-conspirator, may not be called to testify under circumstances where the state knows in advance the witness will refuse to testify but nevertheless places him on the stand in the presence of the jury and, in the face of his Fifth Amendment refusal to testify, reads into evidence his entire declaration or admission incriminating the defendant on trial. This procedure was condemned in Douglas v. Alabama, 380 U. S. 415, supra.

3. The prior declaration or admission must bear sufficient indicia of reliability to warrant a reasonable belief in its truth. Dutton v. Evans, 400 U. S. 74, supra, and Mancusi v. Stubbs, 408

---

[1]For further comment, see Garland and Snow, The Co-Conspirator's Exception to the Hearsay Rule: Procedural Implementation and Confrontation Clause Requirements, 63 J. of Crim. L. 1; Davenport, The Confrontation Clause and The Co-Conspirator Exception in Criminal Prosecutions: A Functional Analysis, 85 Harv. L. Rev. 1378; Griswold, The Due Process Revolution and Confrontation, 119 U. Pa. L. Rev. 711; Note, Confrontation and The Hearsay Rule, 75 Yale L. J. 1434; Seidelson, Hearsay Exceptions and the Sixth Amendment, 40 Geo. Wash. L. Rev. 76; Note, The Confrontation Test for Hearsay Exceptions: An Uncertain Standard, 59 Cal. L. Rev. 580; and Note, Confrontation: Prior Testimony, Confessions and the Sixth Amendment, 36 Tenn. L. Rev. 382. See also the recent case of Hoover v. Beto, 467 F2d 516 (5th Cir.).

U. S. 204, supra. This determination of reliability should be made preliminarily by the court outside the jury's presence. However, an in-custodial confession obtained through official interrogation of the co-conspirator, incriminating the defendant cannot meet the test of reliability. See Bruton v. United States, 391 U. S. 123 (88 SC 1620, 20 LE2d 476); Dutton v. Evans, supra; Mancusi v. Stubbs, supra; and Code § 38-414.

A review of the facts in the present case leads inescapably to the conclusion that none of the hearsay testimony used by the state meets the criteria necessary to satisfy constitutional requirements for use as evidence. Admission of the statement of Herbert Smith, though otherwise admissible under Code § 38-314 and the holding in California v. Green, 399 U. S. 149, supra, was error under Douglas v. Alabama, 380 U. S. 415, supra, because the jury was led to believe that the appellant Bennett might be guilty since his co-indictee was refusing to testify. The procedure used by the prosecuting attorney here, having been disapproved in Douglas v. Alabama, supra, must be regarded as prejudicial error. The in-custodial statement made by James Lingerfelt suffers the same infirmity as the Smith statement and additionally it was not shown to have sufficient indicia of reliability to authorize its admission into evidence under the tests noted above which are constitutionally required. Finally, the statement of Marcus Ratledge, as read to the jury by Detective Russell, fails to pass the confrontation clause tests because there was no showing Ratledge was unavailable to testify and no showing as to the reliability of the statement. The conviction in this case should be reversed and a new trial ordered in view of these decisions as they apply to the facts of this case.

There is still another reason a new trial must be ordered. The trial court charged the jury as follows: "It is further contended by the state in this case that certain statements were made in the presence and hearing of the defendant, Charles Bennett, as to the offense and how it was done, and that the defendant failed to make any answer, failed to make any denial or protest under conditions which require such actions. In this connection, the court charges you that acquiescence or silence when the circumstances require an answer, or the denial or other conduct, may amount to an admission. Whether such statements were made in the presence and hearing of the defendant, Bennett, whether or not the circumstances were such as to require an answer, or to require a denial by him, wherein Charles Bennett failed to answer or deny,

and whether such failure, if any, amounted to an admission on his part, are matters for you, gentlemen, to determine."

The appellant argues (1) this charge was not adjusted to the evidence and (2) this charge is unconstitutional in that it would tend to deny appellant's Fifth Amendment right to remain silent and have no inference of guilt drawn therefrom.

Whether the evidence warranted the charge or not is unnecessary to determine here. These instructions by the court authorized the jury to find that the defendant's silence was evidence of guilt and this severely compromises his Fifth Amendment right to remain silent. I believe this is a civil charge, is unconstitutional on its face and cannot be approved in criminal cases under the rationale of the holdings in Malloy v. Hogan, 378 U. S. 1 (84 SC 1489, 12 LE2d 653); Griffin v. California, 380 U. S. 609 (85 SC 1229, 14 LE2d 106); Miranda v. Arizona, 384 U. S. 436 (86 SC 1602, 16 LE2d 694, 10 ALR3d 974); and Spevack v. Klein, 385 U. S. 511 (87 SC 625, 17 LE2d 574).

Finally, the majority has concluded that all of this, if error, was harmless error beyond a reasonable doubt, citing Chapman v. California, 386 U. S. 18 (87 SC 824, 17 LE2d 705, 24 ALR3d 1065), and Harrington v. California, 395 U. S. 250 (89 SC 1726, 23 LE2d 284). I cannot agree the error was harmless here. Even if it were conceded that the charge by the trial court on silence as an admission was not reversible error and that the procedure used by the prosecution in calling witnesses it was forewarned would refuse to testify was not prejudicial, the admission into evidence of the statement of Marcus Ratledge alone would require a reversal in this case. As noted above, the Ratledge statement was "crucial" and "devastating." No direct evidence was offered by the state to show who actually did the killing — the Ratledge statement directly incriminates appellant Bennett — and the admission of this statement cannot be regarded as harmless error. See Dutton v. Evans, 400 U. S. 74, supra.

No one believes more strongly than I do that the "guilty" should be swiftly apprehended, tried and, when found guilty in a fair trial, punished under the law. What does concern me, however, is when our zeal to punish the guilty overtakes and impinges upon the right of innocent and guilty alike to have a fair trial in accordance with the basic rights of our Constitutions. It is this concern which motivates me to point out what I consider to be grave constitutional deficiencies in this trial.

I am authorized to state that Justice Undercofler and Justice Gunter concur in this dissent.